BYERS BROS. v. T. T. MAXWELL, GUARDIAN, ET AL.

Decided December 16, 1899.

**1. Charge of Court on Weight of Evidence.**

A requested charge which singles out and emasculates certain evidence tending to show motive for false representations relied on as a defense is erroneously given, because on the weight of the evidence.

**2. Same—False Representations as to Value—Opinion—Qualification of Charge.**

A charge that "when one person states to another his opinion as to the value of any property merely as an opinion, and not as a fact that he knows to be true, then the person to whom such opinion is stated in this manner has no right to rely on such opinion, but must exercise his own judgment," if given at all, should be accompanied by a statement of the qualifications suggested by the facts of the given case.

APPEAL from Grayson. Tried below before Hon. DON A. BLISS.

*Galloway & Templeton,* for appellants.

*Hazlewood & Smith, E. C. McLean,* and *Moseley & Smith,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Appellee Maxwell sued appellants, Byers Bros., a firm composed of G. W. and A. W. Byers, upon their promissory note for $2500, with interest and attorney's fees of 10 per cent respectively, dated March 31, 1896, and payable to the Empire Grain Company. Byers Bros. admitted the execution of the note, but denied its validity upon the ground that they had been induced to sign it by the false and fraudulent representations mainly of one C. B. Wandelohr, the general manager of the grain company. Besides pleading a failure of consideration in the note, they claimed damages for deceit, impleading not only Wandelohr and the grain company and its receiver, J. R. Cole, but also Paul Waples, and further charging that Wandelohr and Waples had acted together in making the deceitful representations.

The note declared on was given ostensibly for the purchase of twenty-five shares of stock in the Empire Grain Company, but in reality not so much for an investment in the stock of that company as to enable the grain company to ultimately pay a debt of some $40,000 which it owed the City Bank of Sherman, in which Byers Bros. were stockholders and one of them a director. Wandelohr too was a director in the bank, as were also W. H. Bean and H. L. Hall.

It was suggested by Wandelohr in a meeting or meetings of these directors that an increase of from $20,000 to $25,000 in the capital stock of the grain company would enable it to substantially pay off its other debts, and particularly the then pressing debt of about $10,000 due a New Orleans bag company, and thus leave the bank virtually its sole creditor, Wandelohr further representing either that Paul Waples would himself take $10,000 of the new issue of stock or furnish him, Wande-

lohr, the money for that purpose, the evidence being conflicting on this point. This plan was finally adopted, Bean agreeing to take $5000, Hall $2500, Waples for himself or for Wandelohr $10,000 (according to the version of the testimony adopted), and Byers Bros. $2500 of the new stock.

The payments for the stock were made in the promissory notes of the several parties named, but the shares paid for by Waples were issued to Wandelohr. Byers Bros. were the last to execute their note, and according to their version, finally executed it not only reluctantly but perforce of the false and fraudulent representations of Wandelohr as to the value of the assets of the grain company and its alleged solvency, and the representation that Paul Waples, who was solvent and a thrifty business man, had subscribed for and would take the $10,000 worth of stock, instead of his brother-in-law, Wandelohr, who was insolvent. They were also ignorant of the fact that Waples and Wandelohr were indorsers for the grain company on the debt due the New Orleans bag company, as well as of the fact that Bean' note was to be canceled for the most part by a debt due him from the grain company, on which Waples and Wandelohr were also indorsers.

Wandelohr made a written statement of the assets and liabilities of the grain company to the directors of the bank, as a basis for the proposed increase of stock, which appears to have included in general terms all the items of debit and credit, showing it to be solvent, and which was false only as to the estimates of value placed on the assets, the evidence tending to show that "the bills receivable and the accounts of the Empire Grain Company did not turn out as represented by Wandelohr, and none of the property turned over to the receiver was as represented by him," and that the grain company was really insolvent when the new stock was issued, in April, 1896.

A. W. Byers testified that in executing the note sued on he relied on the representations of Wandelohr, and not on his own judgment entirely, as to the value of the assets of the grain company. On the other hand, there was testimony tending to the opposite conclusion, that is, tending to show that Byers Bros. were aware of the precarious financial condition and prospective failure of the grain company before the note was executed, G. W. Byers closing one of his letters pending the negotiations with the following significant remark in reference to the grain company: "* * * as the ship we are expecting to board is already shaky and leaky."

In addition to the main charge of the court submitting the issue of misrepresentation and deception as to the value of the assets of the grain company, the following special charge was given at the request of Wandelohr and the receiver of the grain company: "Certain notes have been read to you in evidence on which the name of Paul Waples with others appears as sureties or indorsers. Said notes were admitted in evidence only for the purpose of proving or tending to prove the allegations in defendants Byers' answer, and the court instructs you that said

notes so read in evidence was a valid indebtedness due and payable by the Empire Grain Company, and the defendants Byers Bros. not having alleged that they were in any manner influenced or induced or in any manner injured by said notes being indorsed by Paul Waples, the fact that any portion of the money arising from the issue of new stock in the Empire Grain Company was used by the said Empire Grain Company in paying said notes so indorsed by Paul Waples was a matter between the Empire Grain Company and the holders of said paper, and the said Empire Grain Company was authorized to pay said notes so indorsed as the same became due."

The notes referred to in this charge were evidently the Bean and bag company notes mentioned above. No such issue as the one thus submitted, as material to the disposition of the case, was made, even remotely, by the pleadings. It doubtless arose in argument on the trial, and counsel requesting the charge was thus aided by the court in arguing the case. The testimony so singled out and in effect emasculated by this special instruction tended to show a motive for the alleged deceitful representations. There was at least room for the argument on the part of appellants from this testimony that as Wandelohr and Waples were already liable on these notes, they had an undisclosed selfish motive to induce appellants to share the burden with them.

The jury should have been left to weigh the testimony under the arguments of counsel, without interference from the court. The statute which positively declares that the judge in charging the jury "shall not charge or comment on the weight of the evidence," was violated in granting this special instruction. The judgment must therefore be reversed and the cause remanded for another trial.

We are also inclined to the opinion that the issue made by the answer of appellants, to the effect that they had been induced to execute the note declared on in part by the representations that Waples had subscribed for and would take $10,000 of the new issue of stock, when in fact he had not done so and never intended to do so, should have been submitted to the jury, the evidence being conflicting upon that issue. The following is the reason given by the judge for not submitting this issue, as requested: "Refused because the undisputed testimony showed that defendant, Paul Waples, did execute and eliver his note payable to the Empire Grain Company for $10,000, in payment for 100 shares of the stock of said company, but that before said stock was issued the said Waples sold the same to C. B. Wandelohr, and directed that said stock should be issued to the said Wandelohr instead of to himself. The undisputed evidence further shows that said Waples paid off said note."

In stating that the undisputed testimony showed "that before said stock was issued the said Waples sold the same to C. B. Wandelohr and directed that said stock should be issued to the said Wandelohr instead of to himself," we think his honor the district judge must have overlooked the testimony of Paul Waples; which was quite explicit on this

point, as follows: "I did not take any of the new issue of stock of the Empire Grain Company; I did not intend to take any of this stock;" he having already testified that he furnished the money to Wandelohr to pay for the stock, taking Wandelohr's note for $10,000 in payment for the money so furnished.

The first paragraph of the special charge requested and refused upon this issue was not entirely inapplicable to the case alleged by appellants, to sustain which some testimony, at least, tending to do so was adduced, though there was no evidence to the contrary, Waples testifying that he never promised absolutely to take any of the stock himself, but only that he would either do so or furnish Wandelohr the money.

In view of another trial, we express doubt as to whether the sixth paragraph of the court's charge should have been given, to the effect that "when one person states to another his opinion as to the value of any property merely as an opinion, and not as a fact that he knows to be true, then the person to whom such opinion is stated in this manner has no right to rely on such opinion but must exercise his own judgment," etc. This may be accepted as a correct statement of the general rule on that subject, but the rule itself is subject to qualifications, and we doubt the propriety of giving it at all unless it is accompanied with a statement of the qualifications suggested by the facts of the particular case. For a very extensive, if not an exhaustive, digest of the case on this question, see the note to Heden v. Minneapolis, etc., Institute, 35 Law. Rep. Ann., 417. The preceding paragraphs of the charge, which were given in concrete form, sufficiently covered the ground, we think, without the addition of general, abstract propositions.

We are also inclined to think it would be better on another trial to admit the testimony which was excluded on the last as shown by bills of exception 1, 2, and 3.

*Reversed and remanded.*