## HAMMEL v. BENTON et ux.

(Court of Civil Appeals of Texas. Amarillo. Dec. 20, 1913.)

1. DEEDS (§ 70*)—VALIDITY—MISREPRESENTATIONS—ACTIONS—DEFENSES.

In an action to set aside a conveyance of property which was made on account of defend-

ant's misrepresentations as to the contents of the contract and as to extraneous matters, it is no defense that plaintiff, by diligence, might have discovered the falsity of the representations.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 165–182; Dec. Dig. § 70.*]

2. TRIAL (§ 252*)—INSTRUCTION.

In a suit to set aside a conveyance of property on account of defendant's fraudulent misrepresentations, where there were a number of such representations relied on, an instruction submitting to the jury the bare abstract principle that, to affect a contract, fraudulent misrepresentations must relate to a material matter on which a party relied to his injury, and that, if the means of information were equally accessible to both parties, the party relying on the representations must abide the consequences of his own negligence, is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

3. APPEAL AND ERROR (§ 1001*) — REVIEW—FINDINGS.

Where there is evidence to sustain all the issues submitted to the jury, their verdict is conclusive as to its sufficiency.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL.

The refusal of instructions covered by those given is proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. TRIAL (§ 331*)—VERDICT—SUFFICIENCY.

A verdict is not so uncertain that it will not support the judgment where any uncertainty in its terms is made clear by a reference to the rest of the record.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 783; Dec. Dig. § 331.*]

Appeal from District Court, Gray County; L. C. Barrett, Special Judge.

Action by J. T. Benton and wife against H. J. Hammel and another. From a judgment for plaintiffs, defendant Hammel appeals. Affirmed.

R. M. Vaughan, of Hillsboro, and Ewing & Dial, of Miami, for appellant. Crudgington & Works and Lloyd Fletcher, all of Amarillo, for appellees.

HALL, J. Appellee filed this suit against H. J. Hammel and G. M. Counts on the 31st day of July, 1912, for the purpose of rescinding a trade, and prayed in the alternative for damages.

In an amended petition, plaintiff alleged in substance that appellee J. T. Benton entered into a written contract with H. J. Hammel and G. M. Counts, whereby plaintiff agreed to convey to the defendants section 85, block M—2, in Gray county, Tex., together with the rents from the wheat and oat crops thereof for the year 1912 (except a block of 40 acres), also a half interest in a secondhand Deering Header, and other personal property, and in consideration of said conveyance the defendant Hammel agreed to convey to plaintiff sections 9, 10, 15, and 22, in block B—12, free school land in Winkler county,

Tex., and in addition thereto to pay plaintiff $3,000 for said property. It was further alleged that defendant agreed to pay $2,000 for immediate possession of plaintiff's property in Gray county; that in compliance with the contract the said Hammel, on or about the 2d day of April, 1912, conveyed to the said Benton the land in Winkler county, and on or about the 15th day of April Benton conveyed to Hammel the Gray county property, and in connection therewith Hammel caused to be paid to plaintiff $1,130 in money, and executed vendor's lien notes against said section 85 aggregating $1,870, making the total difference of $3,000; that Counts was the agent of Hammel in the trade; at the time of the exchange and transfer of property plaintiff resided in Gray county, about 350 miles from Winkler county; that he was wholly ignorant of land values in that vicinity; that defendant Counts accompanied plaintiff, Benton, from Gray county to Winkler county, where, together with Hammel, plaintiff, Benton was shown the land; that Counts and Hammel took plaintiff to a certain stake in Winkler county which defendants represented to be the center or common corner stake of all four of said sections, and that they represented to plaintiff that four sections lay in a solid body, and in the form of a square, two miles each way; that the north line of said four sections was located about one-fourth to one-half of a mile north of the house located on the land, and some distance south of a range of sand dunes extending east and west across the neighborhood, and also in pointing out to plaintiff the four sections of land, as they lay on the ground, included certain desirable lands of a better grade than any other included in said sections conveyed to plaintiff by Hammel; that plaintiff was ignorant of the actual location of said four sections; that defendants knew this fact, and that plaintiff was further wholly dependent upon defendants for information in regard thereto; that in truth and in fact said four sections of land did not lay in a square; that sections 10, 15, and 22 formed a rectangle, extending three miles from north to south, and one mile from east to west, and section 9 joined section 10 on the west, whereby said land lay in the form of an inverted L or figure 7, being two miles across the north end, and three miles on the east side; that about one-half of section 10 and one-fourth of section 9 was in sand dunes and mounds, and that the same was practically worthless; that section 16, block 12, of said land, which was not conveyed to plaintiff, and which lies in the L made by the west line of section 15, the south line of section 9, and which contained some of the best land pointed out by defendants to plaintiff, as being a portion of the land sold, was not at all owned by said defendants, or either of them; that the defendants

were with plaintiff upon section 16, block 12, of said land, and stated and represented to plaintiff that said section was a part of the four sections of school land proposed to be traded to plaintiff; that section 22, which was pointed out by the defendant to plaintiff, which lies south of section 15, was largely made up of sand dunes, and mounds, and rock points, and is much poorer and cheaper land than section 16; that at the time of the making of said trip of inspection the defendant Counts claimed to be in a great hurry to go. to Hale county to look after his children, claiming that his wife had recently died, and urged plaintiff to close said trade without taking time to investigate said land values, or inquiring as to the same in that neighborhood; that, in order to accommodate the said Counts, plaintiff did close said deal without taking time to inquire as to land values, which otherwise he would have done; that on said inspection trip defendant represented to the plaintiff that said land which they were selling was of the value of more than $5 per acre bonus above what was due the state of Texas, and that the plaintiff had reposed the greatest confidence in defendants, and each of them, in regard to the statements made concerning the desirability, location, and the price of said lands to the state; that said land contained the roots and turf of wild alfalfa, which grew up in the spring and made the most desirable pasture; that the defendants also represented that about two weeks prior to the date of said trade surveyors had been down over a portion of said land for the purpose of surveying out a prospective railroad, and that arrangements were being made for the building of same, which would greatly enhance the value of the land. Plaintiff alleges that in truth and in fact no surveyors had been over said land, and no arrangements had been made for building any railroad. It is further alleged that the defendants represented that the soil of said land was fertile, was from two to six feet deep, and very productive, and that the soil rested upon a clay foundation; that in truth and in fact said land was not fertile, and the soil not of the depth represented; that defendant represented to plaintiff that there was not exceeding 200 acres of sandy land on the entire tract, while in truth and in fact about 1,000 acres of such land was practically worthless; that the value of the land sold by defendant to plaintiff did not exceed $1 per acre bonus above the amount due the state; that it did not lie in a square, but in an L shape; that section 16 was not included in the sale, and that in the absence of any prospective railroad the shallowness, unfertility, nonproductiveness of the soil, and the injured condition of section 22, by reason of the cattle passing over and across it frequently, reduced the value of said land very greatly; the land as actually pointed out as covered by said trade would not ex-

ceed $2 per acre bonus above what was due the state, and that plaintiff's land in Gray county at the time of said deal was reasonably worth $25 per acre; that defendants represented to plaintiff that there was not exceeding an average of $2 per acre due the state of Texas for said land, and that the deal was entered into upon that basis; that in truth and in fact there was due the state of Texas $4.25 per acre on sections 9 and 10, and $3.25 on sections 15 and 22, or an average of $3.88 per acre; that, if plaintiff had known the true form in which said land lay, the true amount due the state, the market value thereof, the nature, kind, and condition of the soil, he would not have made said deal; that he was induced to make the trade by the false and fraudulent representations above set out, and by reason thereof the title to their property in Gray county, together with the rents and personal property, has never passed from him.

It is further urged that, in addition to the frauds and representations above set out, there also entered into the making of said contract a mutual mistake as to the amounts to which plaintiff was entitled, in this: That at and prior to the execution of the written contract of sale, in their negotiations in regard to the exchange of property, it had been agreed that plaintiff's Gray county land should be estimated in the trade at $25 per acre, a total of $16,000, and that said items of personal property and said grain rents were to be figured in with said land at that price; that said Winkler county land should be figured in at $5 per acre, or a total of $12,800; that, deducting the sum of $3,450, the amount of indebtedness against plaintiff's land, would make the net value some $12,550, or practically the same as said bonus price of said Winkler county land, and, figured at this price, defendant Hammel would pay $3,000 for grain rents, personal property, etc., which would be done by the payment of a note to the bank of Miami, for $630; that they should pay plaintiff $500 in cash, and execute three notes for $633.33⅓ each, which makes a total of $3,000 difference; that the immediate possession of the Gray county land carried with it plaintiff's dwelling house, about 150 acres of land in cultivation, together with pasture lands, and plaintiff should have $2,000 additional, or a total net consideration of $17,550. It was further alleged that they agreed all said stipulations should be reduced to a written contract which should contain all matters agreed upon; that defendants prepared first a preliminary memorandum of agreement, and later a full and complete contract, which was acted upon as a final agreement between the parties; that, in the drawing and preparation of said contracts, defendant intended to embody and have embodied therein all stipulations and agreements entered into during said trade by which the plaintiff should have

a difference of $3,000 between equities in said property, and, in addition thereto, $2,000 for immediate possession; that, by mistake and oversight of the draftsmen in drawing said contract, no consideration was figured in for immediate possession, but both the plaintiff and defendants executed and signed the contract, believing that said stipulation as to immediate possession was figured therein; that, in the hurry to sign said contract, neither of the parties observed the mistake, and that plaintiff would not have signed and entered into said contract if he had observed the mistake, which they say is mutual; that, should the plaintiff be mistaken in regard to the mutual mistake, then he alleges that he was induced to sign the contract, as well as the preliminary draft thereof, by and through the fraudulent acts, misrepresentations, and statements of the defendants, in this: That on the night preceding the preparation and execution of said complete and final contract of sale the defendant drew up a preliminary or brief contract, and in connection therewith made all of the figures in determining the provisions of the contract after the same had been fully agreed upon; that plaintiff left the making of the figures to defendant, the same being done at night in defendant's home, with only one light, and that plaintiff was unable to read or make figures at night by candlelight without great effort, and that he had reposed in defendants full confidence in the drawing of the contract, and relied implicitly upon their honesty and fair dealing; that, in the preliminaries of the making of said contract, the defendants made the figures and calculations in a way to eliminate from the total result the $2,000 that plaintiff was to have for immediate possession of the premises, making it appear by their figures that, although the written contract did not include the $2,000, yet the net result of the figures made resulted to plaintiff's benefit; that they falsely and fraudulently represented that the net result of their figures and the reading of the contract as prepared by them secured the plaintiff the full consideration, notwithstanding said statements therein as to said amounts due the state of Texas on the Winkler county land, the amount due the plaintiff on Gray county land, the debt to be paid the bank, the notes to be executed, the cash to be paid, etc.

Mrs. Maggie Benton alleged that she is the wife of the plaintiff, J. T. Benton, and that the Gray county land, at the time of the preparation of the contracts of sale, was their homestead, and set out her homestead rights therein, electing out of the 642 acres 200 acres described in the petition, by metes and bounds; that, as soon as the trade was made, plaintiff, with his family, moved to Winkler county, where they resided until they discovered the frauds, at which time they abandoned the same, and moved to Gray county, and thus in moving they incurred an expense of about $400. It is alleged that the defendant Counts participated in all the false and fraudulent representations and deceits practiced on plaintiff, and was a confederate of the defendant Hammel, by reason of which defendants are jointly and severally liable unto plaintiff. Plaintiff further alleged that he tendered in open court a deed reconveying to defendant Hammel the Winkler county land, with possession thereof, and that he offered to repay the money received by him in said dealing. Plaintiff prayed for judgment canceling the sale and exchange of the property between the parties, the recovery of the title and possession of his lands in Gray county, and the personal property, and $400 damages in moving to and from Winkler county.

The defendants answered with a general demurrer and general denial, specially pleading that the contract was entered into April 1, 1912, between the parties, declaring upon the same in full; that the same was dictated by plaintiff and the defendant Counts to defendant Hammel, and that defendant Hammel reduced the same to writing. G. M. Counts declared that he had no interest in any part of the sale except as an agent for defendant Hammel, and that he signed the same only as the agent of Hammel; that, after the execution of the memorandum of agreement, the parties proceeded to the office of an attorney at Midland, Tex., who, by agreement, drew the contract as stated in plaintiff's petition. Defendant further averred that the contract was duly and legally acknowledged by Hammel, Benton, and Counts at the time of its execution, at which time the plaintiff, Benton, executed his applications for the purchase of sections 9, 10, 15, and 22, addressed to J. T. Robinson, Commissioner of the General Land Office, which applications set out the amount due per acre on the land, and were forwarded at the expense of plaintiff, Benton, to the Commissioner of the Land Office, where they were filed on May 8, 1912; that, in pursuance of these applications and obligations, the said plaintiff made his proof of occupancy on said land on the 4th day of May; that the defendant Hammel kept and performed all and singular the terms and covenants in said contracts contained; that the trade of the personal property was an independent and separate trade from the exchange of the land.

On April 10, 1913, the plaintiff filed its first supplemental petition, which consisted of a general demurrer, general denial, and special plea, to the effect that, at the time the plaintiff, Benton, signed the applications and obligations to the state, the same was done in connection with and as part of the scheme and device to cheat, wrong, and deceive plaintiff, as alleged in his amended petition, and that said acts of fraud and deceit were

imposed while the plaintiff was under the influence of the defendants, as shown in the petition. It is further alleged that plaintiff, Benton, discovered the frauds only a short time before the required three years of occupancy, and that they remained on the land only for the purpose of protecting defendants in the premises. It is also further alleged on the part of plaintiff Mrs. Maggie Benton that she claimed a homestead on the Gray county land.

On the 10th day of April, 1913, the case was tried before a jury, resulting in the following verdict: "We, the jury, find for plaintiffs, and against defendant H. J. Hammel, that the contracts in question be rescinded and canceled. We also find damages in favor of plaintiffs to the amount of $630.00 and $500.00, and interest balancing said two amounts mentioned in the pleading and in the charge of the court we find for G. M. Counts, one of the defendants." Upon this verdict, judgment was rendered canceling and rescinding the contract.

[1] The first assignment briefed insists that the court erred in not instructing the jury that J. T. Benton was bound to know the contents of the contracts and obligations if he signed the same without reading them, and that, having failed to read them, he could not be heard to complain that the stipulation for the payment of $2,000 for immediate possession of the Gray county land was omitted, and that the price per acre due the state of Texas as stated in said obligations was greater than as represented by defendants. A special charge was asked by defendants to this effect. The plaintiff alleged fraud, misrepresentation, and mutual mistake in the execution of the contracts and obligations, and alleged facts showing a want of opportunity to inform himself as an excuse for failure to examine into the facts; alleged confidence in the vendor, which, we think, warranted the court in refusing to give the special charge. A person injured by false representations of another is not bound to exercise diligence to discover the falsity of the representation, but, in the absence of knowledge to the contrary, is entitled to rely and act on the statements of the wrongdoer. Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061. One induced by reliance on false representations to enter into a contract is not precluded from defeating its enforcement by the fact that by ordinary diligence he could have discovered their falsity before acting upon them. Hall v. Grayson County National Bank, 36 Tex. Civ. App. 317, 81 S. W. 762; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Holstein v. Adams, 72 Tex. 485, 10 S. W. 560. The first and third assignments, relating to the same general question, are overruled.

[2] The second assignment is predicated alone upon the fraudulent misrepresentations alleged to have been made by the defendants as to the amounts due the state of Texas on the Winkler county lands, and complains of the court's refusal to give special charge No. 2. The special charge appears nowhere in the assignment, and the substance of it is stated as follows: "By said charge the defendant requested the court to instruct the jury that fraudulent misrepresentations, to effect a contract, must relate to matter material to it, and in regard to which the other party had a right to rely, and did rely to his injury; but, if the means of information as to the matters represented were equally accessible to both parties, they will be presumed to have informed themselves, and, if they did not avail themselves of such opportunity, they must abide the consequences of their own negligence." This charge is simply the statement of an abstract principle of law, without informing the jury of its application to the issues. The court should apply the law declared in its charge to the issues, and a failure to do so in this case might result in injury. There are many false representations alleged, and which the evidence tends to sustain, and the jury should not have been permitted to apply the principle announced in the special charge to any of the representations set out. The court did not err in refusing this charge. Hayward Lumber Co. v. Cox, 104 S. W. 403; Prentice v. Security Co., 153 S. W. 925; Byars v. Maxwell, 22 Tex. Civ. App. 269, 54 S. W. 789; Brockenbrow v. Stafford et al., 76 S. W. 576; M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058. This assignment has not been properly briefed, in that the requested charge refused has not been copied into the statement. Parker County v. Jackson, 5 Tex. Civ. App. 36, 23 S. W. 924; Holton v. Railway Co., 31 Tex. Civ. App. 128, 71 S. W. 408; Horseman v. Coleman County, 57 S. W. 304; Armstrong v. Elliott, 20 Tex. Civ. App. 41, 48 S. W. 605, 49 S. W. 635.

[3] By his fourth assignment, appellant insists that the evidence of misrepresentation and fraud by defendants raised only one issue, that is, as to the actual location of the land purchased, and that the court should not have instructed upon any other issue. This assignment cannot be sustained. There was some evidence to sustain each issue submitted to the jury. The question of its sufficiency is concluded by the judgment.

[4] The fifth assignment complains of the refusal of the court to give special charge No. 6, requested by appellant. The substance of this charge is given in paragraph 3 of the main charge.

[5] The sixth and seventh assignments are to the effect that the verdict is uncertain, and cannot support the judgment. By reference to the record, any uncertainty that may exist in the verdict is made clear. The plaintiff's pleadings and the charge of the court upon the items for $630 and $500 mentioned in the judgment explain fully what the finding of the jury is with reference to them, and that they did not credit on said payments any amount as they were permit-

ted to do under section 7 of the court's general charge.

Plaintiff's assignments of error in this case recite at great length the evidence bearing upon the point urged in the assignment. Statements from the record of evidence, either verbal or written, tending to throw light upon the assignments should be set out in the statement following the proposition. Appellee has objected to the consideration of some of the assignments; but we have disregarded the objection when we feel that possibly the assignment should have been disregarded.

Finding no reversible error in the record, the judgment is affirmed.