John Robert HAMPTON, et ux.

v.

**ALLSTATE INSURANCE COMPANY.**

No. 1–98–0077.

United States District Court,
M.D. Tennessee,
Columbia Division.

May 6, 1999.

740

Randy Hillhouse, Hillhouse & Huddleston, Lawrenceburg, TN, for plaintiffs.

Russell E. Reviere, Rainey, Kizer, Butler, Reviere & Bell, Jackson, TN, for defendant.

## MEMORANDUM

HIGGINS, District Judge.

The plaintiffs, John Robert Hampton and Pamela Renee Hampton, Tennessee citizens, originally filed this action in the Circuit Court of Wayne County, Tennessee, against the defendant, Allstate Insurance Company, an Illinois corporation with its principal place of business in Northbrook, Illinois. The plaintiffs' claims arise out of their insurance policy with Allstate. They allege that Allstate denied their insurance claims for damages to their house and the contents that were destroyed by fire. The plaintiffs' claims are for the value of their dwelling and its contents, as well as their additional living expenses, as a result of the fire, in the total amount of $113,900.00. In addition, the plaintiffs seek the state statutory penalty under the bad faith insurance practices statute, Tenn.Code Ann. § 56–7–105.

Allstate removed the action to this Court, citing the amount in controversy and the diversity of citizenship of the parties as vesting this Court with jurisdiction under 28 U.S.C. § 1332, the federal diversity statute.

Pending before the Court is the defendant's motion (filed December 7, 1998; Docket Entry No. 6) for partial summary judgment contending that the plaintiffs did not make a formal demand, as required by Tennessee law, to assert a claim under Tenn.Code Ann. § 57–6–105 and, therefore, the Court should dismiss this claim. In response, the plaintiffs submitted the affidavit of Pamela Renee Hampton identifying the repeated demands that she made upon Allstate officials after Allstate denied their insurance claims, including a demand for the bad faith penalty.

Upon consideration of Tennessee law and in light of the rule that with a motion for summary judgment the facts are to be construed in a light most favorable to the plaintiffs, the Court concludes that there is sufficient evidence to support a judgment on the plaintiffs' bad faith penalty claim. Allstate investigated the plaintiffs' claims and concluded that the plaintiffs intentionally set or caused the setting of the fire at their residence and willfully misrepresented the value of their loss. The plaintiffs assert that they made a formal demand upon Allstate when they made repeated requests for payment of their claims and gave repeated notices of their intent to assert a claim for the bad faith penalty for Allstate's earlier and continued denial of their claims.

Given the passage of sixty days from the date of the plaintiffs' alleged demands for payment of their claims, including a claim for bad faith denial, the Court concludes

that there are material factual disputes about whether such a demand was made.

Accordingly, the defendant's motion (filed December 7, 1998; Docket Entry No. 6) for partial summary judgment will be denied.

## I.

According to Pamela Hampton's affidavit (filed January 28, 1999; Docket Entry No. 12), a fire destroyed the Hamptons' home and contents, and she and her husband submitted claim forms to Allstate, their insurer, to pay the damages covered by the insurance policy, but Allstate refused to pay. Pamela Hampton received a letter, dated February 17, 1998, from Rand Smith of Allstate who stated that after its investigation, Allstate concluded that the Hamptons intentionally set or caused to be set the fire at their residence and that they made misrepresentations as to the amount and extent of the destroyed personal property. Accordingly, Allstate denied the Hamptons' claims in their entirety.

After receipt of this letter, Pamela Hampton spoke with Brad Hawkins, a special investigations adjuster with Allstate, by telephone and demanded that Allstate pay her and her husband's claims and informed Mr. Hawkins that if Allstate did not do so, she would file a legal action for emotional distress, slander, bad faith and any other claim permissible by law. Pamela Hampton insists that she specifically informed Mr. Hawkins that she would make a claim for bad faith. On March 11, 1998, Pamela Hampton called Colleen Treanor, an Allstate representative in Chicago, and made another demand for the payment of their claims and again asserted that a legal claim for "bad faith damages" would be made, if the claims were not paid. Thereafter, Pamela Hampton spoke with John Alexander, an Allstate supervisor, and reiterated her intent to sue for all remedies under law.

Ms. Hampton repeated her demands to Brian Walker, Allstate's representative for Tennessee and Alabama. On March 11, 1998, Pamela Hampton also complained to Ella Brown in Allstate's regional office that if their insurance claims were not paid within 60 days, she would sue Allstate.

Allstate does not challenge any of the specific factual assertions in Pamela Hampton's affidavit. According to Mr. Hawkins, Allstate did not receive "any demand for payment" between February 17, 1998, and May 12, 1998. Brad Hawkins affidavit (filed February 7, 1998; Docket Entry No. 9). On May 12, 1998, the Hamptons filed their action in the Circuit Court for Wayne County.

## II.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> *As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted.

*Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in the original and added in part). Earlier the Supreme

Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties.

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

As the United States Court of Appeals for the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." *Martin v. Kelley*, 803 F.2d 236, 239, n. 4 (6th Cir.1986). The moving party's burden is to show "'clearly and convincingly' ... the absence of any genuine issues of material fact." *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526 (6th Cir.1991) (citation omitted). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the non-moving party then 'must set forth the specific facts showing that there is a genuine issue for trial.'" *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989) (quoting *Celotex* and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must address more than a scintilla of evidence to overcome the motions [and] ... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). Moreover, the Court of Appeals explained that

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street*, 886 F.2d at 1480. See also *Hutt v. Gibson Fiber Glass Prod., Inc.*, 914 F.2d 790, 792 (6th Cir.1990) (citation omitted) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" quoting *Liberty Lobby*.)

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, *summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.*
>
> ....
>
> Progressing to the specific issue in this case, we are convinced that *the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.* If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, *the*

*judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff of the evidence presented.* The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—* "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

*Liberty Lobby,* 477 U.S. at 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d at 211–212, 214 (citation omitted and emphasis added).

It is likewise true that

in ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . ."

*Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "all facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." *Duchon v. Cajon Company,* 791 F.2d 43, 46 (6th Cir.1986) (citation omitted).

### III.

As a threshold matter, in a diversity action, the district court is obliged to apply the law of the forum. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hamilton Nat'l Bank of Chattanooga v. Meadow,* 492 F.2d 1243 (6th Cir.1974); and *American Training Serv. v. Commerce Union Bank,* 415 F.Supp. 1101, 1104, n. 3 (M.D.Tenn.1976), *aff'd without op.,* 612 F.2d 580 (6th Cir. 1979). Here, the parties' contract was executed in Tennessee and both parties have argued Tennessee law as the legal authority. Accordingly, the Court applies Tennessee law to the parties' substantive claims.

As to the general rule on insurance contract claims, in *Palmer v. State Farm Mutual Automobile Insurance Co.,* 614 S.W.2d 788, 789 (Tenn.1981), the Tennessee Supreme Court stated that "in construing contracts of insurance, we attempt to ascertain the intent of the contracting parties, and since the policy was drafted by the insurance company we must resolve all ambiguity and doubt in favor of the insured. We need not abandon common sense, indeed, we are required to exercise common sense in construing these policies." This rule of construction for insurance contracts also extends to claims arising under payment of loss clauses:

It must be remembered, too, that this policy and the "Loss Payable Clause" attached to it, and which is protection for the lienor, was drafted by the insurance company's attorneys, and it is rather obvious that in doing so they were intending to benefit the insurance company only and it should be construed most strongly against it.

*Calvert Fire Ins. Co. v. American Nat'l Bank & Trust Co.,* 222 Tenn. 515, 438 S.W.2d 545, 547 (1969) (citation omitted).

The critical issue on this motion for partial summary judgment is whether the Hamptons made the requisite demand upon Allstate to assert a claim under Tennessee's bad faith penalty statute for insurors.

The Tennessee statute on an insuror's bad faith failure to pay a claim provides as follows:

(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they *refuse to pay the same within sixty days after a demand shall have been made by the holder of the policy or* fidelity bond on which the loss occurred, *shall be liable to pay the holder of the policy* or fidelity bond, in addition to the loss and interest thereon, *a sum not exceeding twenty-five percent (25%) on the liability for the loss;* provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

Tenn.Code Ann. § 56–7–105 (1994) (emphasis added).

Allstate relies upon the Tennessee Supreme Court's decisions in *St. Paul Fire and Marine Insurance Co. v. Kirkpatrick,* 129 Tenn. 55, 164 S.W. 1186 (1914) and the *De Rossett Hat Co. v. London Lancashire Fire Insurance Co.,* 134 Tenn. 199, 183 S.W. 720 (1915) that unless a "formal demand" is made, a plaintiff cannot invoke the bad faith penalty statute based upon the denial of an insurance claim. Defendant's memorandum (filed December 7, 1998; Docket Entry No. 7) at 3. Allstate further cites to a series of Tennessee Court of Appeals decisions including, *Walker v. Tennessee Farmers Mutual Insurance Co.,* 568 S.W.2d 103 (Tenn.Ct.App. 1977) holding that the mere completion of a claims form and the answering of questions does not satisfy the formal demand

for this claim. *See also, Hurley v. Tennessee Farmers Mut. Ins. Co.,* 922 S.W.2d 887 (Tenn.Ct.App.1995), *Gillian v. Allstate Ins. Co.,* 1997 Tenn.App. LEXIS 533 (Tenn.Ct. App., August 1, 1997) (a copy of which is attached to Docket Entry No. 7).

In *Kirkpatrick,* the leading Tennessee Supreme Court decision, the insured sent letters concerning the sale of damaged items by the insured that had not been objected to by the insurance company. The insurance company, however, made a demand for arbitration and the insured then sued. The trial court instructed the jury on the bad faith penalty statute, and the jury awarded plaintiffs the penalty. On appeal, the Tennessee Supreme Court reversed and explained that

If [the insurer] does not pay, *the formal demand required by the penalty statute above quoted should be made. A failure to pay for 60 days thereafter would justify a recovery of the penalty* upon its further being made to appear that the failure was not in good faith. Likewise *a refusal within the 60 days after such formal demand would justify suit,* and the penalty would be incurred, provided, as in the previous case, it should be made to appear that the refusal to pay was not in good faith.

*The formal demand not having been made, as required by the statute, there can be no recovery of the penalty. The formal demand not having been made in this case, it is not necessary to consider the question of good faith or the contrary. It is true there was a demand made in the present case, but it does not appear when it was made.* Furthermore, it cannot be said that the time for the formal demand to initiate the liability for the penalty had arrived; since an arbitration had been demanded and submitted to, and had been partly executed by the arbitrators, but not fully, and a bill had been filed by the insurance companies to set aside the award. The award being defective, the insurance companies had the right to file

a bill to set it aside, and therefore the time for making the formal demand never really arrived.

. . . .

... In the case before us, it does not appear that any demand was made after the obligation of the company to pay had accrued. *There was a demand, whether formal or not in the sense of the statute does not appear, to pay the amount fixed by the arbitrators,* but the companies' failure to comply with that demand was justified by the subsequent decree of the chancery court setting aside the award on the grounds stated supra, as to which there was no appeal. . . .

*Kirkpatrick,* 164 S.W. at 1190.

On a petition to rehear in *Kirkpatrick,*[1] the Tennessee Supreme Court addressed its earlier holding in *Thompson v. Interstate Life and Accident Co.,* 128 Tenn. 526, 162 S.W. 39 (1913), on the requirements for a demand to invoke the bad faith penalty statute. In its petition to rehear, the Court observed that

[t]he demand provided for in the statute is intended to operate as a fair warning to the insurer that the penalty will be claimed, on failure to pay within 60 days...; the underlying thought being that the insurers on formal demand so made would, noting the warning, thereby be induced to pay the loss without suit, in the absence of some real and bona fide defense.

*Kilpatrick,* at 1190.

In *Thompson,* the Court addressed a claim where the insured made a demand upon the insurance company and payment was refused and the insured then filed an action 30 days later. The Court held that

under a proper construction of the foregoing statute, the defendant is not entitled to a delay of 60 days after payment has been refused. *The manifest purpose of the Legislature in fixing the limit of 60 days after a demand as the time in which the defendant could withhold payment was to enable it to investigate the nature of the loss and determine its liability under the contract. If the investigation has already been made, or if the defendant is content with the facts in hand to refuse payment, no good purpose could be served by requiring the policy holder to wait sixty days before commencing suit.* The language of the statute does not require such a construction. It is provided that, if "they refuse to pay the same within sixty days after a demand shall have been made," the penalty is recoverable. This means that the defendant may decline to answer the demand for 60 days, and, as long as no refusal is made within that period, the claimant would necessarily be required to withhold suit; but, if the refusal to pay is made within 60 days after the demand, the right to commence the suit accrues immediately upon the refusal. Sixty days is the extreme limit allowed by the Legislature in which the company can investigate the question of its liability, and, if it fails to respond to the demand for payment within that time, the suit may be commenced without proof of a refusal.

*Thompson,* 162 S.W. at 39 (emphasis added).

As to *De Rossett,* the Supreme Court defined "a demand" not with respect to formality, but whether the demand is made after the maturity of the policy is

1. In *Kirkpatrick,* the Court noted that the State of Georgia has a similar law, 164 S.W. at 1190, and Georgia courts have interpreted the Georgia bad faith statute and the requisite demand as follows:

the purpose of the statute's demand requirement is to adequately notify an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate the claim within the 60–day deadline. While Georgia law recognizes that no particular language is required to constitute a demand, the language must be sufficient to alert the insurer that bad faith is being asserted.

*Primerica Life Ins. v. Humfleet,* 217 Ga.App. 770, 772, 458 S.E.2d 908, 910 (1995).

fixed according to its terms. *De Rossett,* 183 S.W. at 723. In *De Rossett,* a lawyer for one of the insureds wrote a letter to the insurance company demanding payment of the client's claim. *Id.* The Court found that the lawsuit that was filed within three weeks of the lawyer's letter was not a proper demand because the 60–day period had not elapsed since the date of the lawyer's letter. *Id.* at 723–24 (citing the basic purpose of the demand under *Kirkpatrick* ).

Subsequent Tennessee Court of Appeals decisions reiterate that there are four elements of a bad faith penalty claim under § 56–7–105:

> (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) that the refusal to pay must not have been in good faith.

*Palmer v. Nationwide Mut. Fire Ins. Co.,* 723 S.W.2d, 124, 126 (Tenn.Ct.App.1986) (citations omitted).

In *Palmer,* however, the issue was decided on the basis that "the proof overwhelmingly establishes the insurer was acting in good faith". *Id.* None of the Tennessee Courts define precisely what a "formal demand" is for the purposes of a claim under § 56–70–105.

■ From the Court's review of the cited Tennessee decisions, none expressly require the formal demand to be a written demand. The statute only refers to "a demand." Among the numerous definitions of the term "formal," none of them define the term to mean written. Among the more relevant definitions are "following or according with established form, custom, or rule ... done in due form; carried out with solemnity ... based on forms and rules ... requiring special or stipulated solemnities or formalities to become effective (as in the creating of a legal relationship) ..." *Webster's Third New Int'l Dictionary* at 893 (1981).

■ In *Kirkpatrick,* the Tennessee Supreme Court made it clear that the purpose of this statute is to allow the insurer to evaluate its reasons for denying the claim after being aware for 60 days that if the claim is not paid, the insurer faces the risk of exposure to a bad faith penalty claim. In *Thompson,* the Tennessee Supreme Court states "the manifest purpose ... of the Legislature in fixing the limit of 60 days was to enable [the insurance company] after a *demand* to investigate the nature of the loss and determine its liability under the contract." *Thompson,* 162 S.W. at 39 (emphasis added). In *De Rossett,* the Court made it clear that the lawsuit could not be filed before sixty days after the notice of intent to file a "bad faith" claim, if the contractual claim is not paid, even where only one of the insureds' lawyers made a written demand.

■ The purpose of the statute was served here as reflected by Allstate's February 17, 1998, letter reflecting Allstate's adequate time to investigate the Hamptons' claims. Accepting Pamela Hampton's assertions as true, as required on this type of motion, Allstate's representatives were clearly on notice of Allstate's exposure to a bad faith claim and the Hampton's intentions to pursue such a claim. To require more of the Hamptons, particularly in light of the wording of Allstate's letter, would call for an act of futility.

To be sure, § 56–7–105 is a penal statute to be construed strictly, but this statute refers only to "a demand." Without a clear definition of a "formal demand" by the Tennessee courts as requiring a written demand, this Court reverts to the Tennessee Supreme Court's statement of the purposes of § 57–6–105.

■ The Court concludes that the elements of "a formal demand" under § 56–7–105 are proof of acts that serve the clear purposes of a "formal demand" under § 56–7–105 and, consistent with Tennessee

decisional law, those purposes are: (1) the insurance company has an opportunity to investigate the insured's claim of loss; (2) the insurance company is aware or has notice from the insured of the insured's intent to assert a bad faith claim, if the disputed claim is not paid, and (3) 60 days has expired after the insured gives such notice before filing suit. Under the facts here, each of these purposes has been satisfied here.

The Court also adopts the Tennessee courts' rule of construction of insurance contracts, *i.e.*, when in doubt, construe the policy in favor of the insured. Without a contractual provision in Allstate's insurance policy requiring more, the Hamptons' acts, if true, were sufficient to constitute a "formal demand" and thereby to invoke a claim under § 56–7–105.

The Court concludes that the defendant's motion for partial summary judgment on the plaintiffs' bad faith claim should be denied.

An appropriate order will be filed.