State Automobile Insurance Company of
Columbus, Ohio.

*v.*

Mr. and Mrs. G. C. Rowland.

427 S.W.2d 30.

(*Nashville,* December Term, 1967.)

Opinion filed April 15, 1968.

HOOKER, KEEBLE, DODSON & HARRIS, Nashville, for plaintiff in error.

HUGH C. GRACEY, Nashville, of counsel, GRACEY, BUCK, MADDIN & COWAN, Nashville, for defendants in error.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The parties will hereinafter be referred to as they appeared in the trial court; to-wit, plaintiffs, Mr. and Mrs. G. C. Rowland, and the defendant, State Automobile Insurance Company of Columbus, Ohio.

The plaintiffs carried a policy of automobile liability insurance with the defendant company providing limited coverage to $5,000.00 for personal injuries plus similar limited coverage for property damage. This policy was in full force and effect on November 23, 1962, when Mrs. Rowland was involved in an automobile accident with one M. A. McRea, while driving the automobile insured by the defendant. McRea subsequently filed suit against the Rowlands alleging damages in the amount of $50,000.00. The defendant company assumed the defense of the case as was provided by the insurance contract. The trial of the case resulted in a judgment of $18,000.00 against the Rowlands.

After a motion for a new trial was dismissed, the defendant paid the limits of its coverage, $5,000.00 for personal injuries and $429.58 for property damage, leaving an unpaid balance of $12,570.42.

The plaintiffs instituted the present suit in an attempt to recover this unpaid balance from the defendant; proceeding on the theory that the defendant was guilty of gross negligence and conduct amounting to bad faith in the investigation, negotiation and defense of the claim against the plaintiffs. The case was tried before a jury and resulted in a verdict for the plaintiffs for the unpaid portion of the judgment with interest, for a total of $13,880.85. The case was appealed to the Court of Appeals wherein the judgment was affirmed. This Court granted certiorari and after reading the briefs, hearing argument and independently researching the question, we are now in a position to render a decision.

Before discussing the assignments of error and our conclusions concerning the same, we are of the opinion that the nature of the case necessitates a discussion of the facts involved.

The accident in question occurred as Mrs. Rowland was traveling north on a four lane highway following Mr. McRea's car. Ahead of Mr. McRea's automobile was one driven by a Mrs. Margaret C. Christopher. The actual details of how the accident occurred are not at issue in this case. Suffice it to say that Mrs. Rowland ran into the rear of Mr. McRea's automobile.

Mr. Hindman, a claims adjuster for the defendant at the time of the accident, testified that after conducting an investigation of the accident, ''I determined from my own feeling that it was a case of liability'' (on the part of Mrs. Rowland). Mr. Hindman further testified that his report to the defendant company sufficiently conveyed the idea that Mrs. Rowland was at fault.

In May, 1963, Mr. William F. Carpenter, representing Mr. McRea, took the discovery deposition of Mrs. Rowland and at the same time, Mr. Stewart, representing the defendant took the discovery deposition of Mr. McRea. At a later date Mr. McRea's physician, Dr. Card, and Dr. George Carpenter were deposed concerning the seriousness of Mr. McRea's injuries. It would appear that these deposition sessions were less than favorable to Mrs. Rowland and the defendant company, which had undertaken to conduct her defense. As was stated by the Court of Appeals:

"Mr. McRea received injuries resulting from the accident which were estimated by his physician, Dr. Card, as causing disability of 25% to 30% to his entire body, while Dr. George Carpenter fixed his disability at 20% to 25%. * * * It is further insisted by plaintiffs, with some evidence to support their insistence, that the facts of the accident as developed prior to the trial established a case of liability on their part and also established beyond question the serious and permanent nature of the injuries received by Mr. McRea so that judgment beyond the policy limits should have been anticipated by those representing them and their insuror."

Mr. Stewart, the attorney representing the defendant, testified at the trial of the instant case that he thought that the doctors set Mr. McRea's disability figure too high. However, at no time did he, or anyone else representing the defendant company, request to have Mr. McRea examined by a physician of their choosing as they have a right to do under the Tennessee discovery law.

Mr. Stewart testified on cross-examination that he knew that the case was one of clear liability and that he so informed the defendant company. Mr. Bush, the claims supervisor for the defendant, testified on cross-examination that Mr. Stewart had informed him that the case was one of clear liability on the part of Mrs. Rowland. Mr. Bush further testified that he was furnished with copies of the depositions of the two physicians.

The case of *McRea vs. Rowland* was set for trial December 13, 1963. Mr. Stewart wrote to Mr. and Mrs. Rowland advising them of this fact and requesting their presence in court. This letter was answered by Mrs. Blazer, a daughter of the Rowlands, who informed Mr. Stewart that her mother had suffered a stroke and could not be present in court. Mrs. Blazer stated that it would be advisable for Mr. Stewart to communicate with her concerning the trial and that she and her parents would be glad to cooperate in any way they could. There is some conflict in the testimony as to how closely Mr. Stewart kept the Rowlands informed concerning the status of the case.

The case was continued and reset for February 24, 1964. On that morning, while waiting for the opening of court, a discussion was had between Mr. Sasser and Mr. Carpenter, attorneys for Mr. McRea, and Mr. Stewart. Mr. Carpenter asked Mr. Stewart if they could not settle the case and made an offer to settle for $11,500.00, which represented $10,000.00 for personal injuries, plus out of pocket expenses and property damages. Mr. Stewart made no reply to this offer, but instead simply shrugged his shoulders and walked away. Mr. Carpenter testified that he then asked Mr. Stewart if the offer was above the policy limits, and that Mr. Stewart just shrugged his

shoulders again and kept walking. The case was again continued because of a crowded docket and was set for June 25, 1964. There were no more discussions concerning settlement of the case after the morning of February 24, 1964.

Mr. Stewart testified that he reported the offer of $11,500.00 to Mrs. Blazer. Mrs. Blazer, however, testified that the offer was never communicated to her. She did testify that Mr. Stewart discussed with her over the telephone the ability of her parents to pay anything towards a settlement of the case at which time she informed him that they would not be able to pay anything.

On February 25, 1964, after the case against the Rowlands had been twice set for trial and continued, Mr. Stewart wrote Mr. and Mrs. Rowland and advised them that since they had been sued for an amount in excess of their policy limits, they might wish to retain an attorney to represent their interests.

At the trial of the case on June 25, 1964, Mr. Stewart represented the Rowlands. Neither the Rowlands nor Mrs. Blazer were present in the courtroom. No evidence was introduced in behalf of the Rowlands, Mr. Stewart made no motion for another continuance although he had a doctor's certificate which has been made available by Mrs. Blazer.

The attorneys for Mr. McRea testified that had they been offered $5,429.00 with knowledge that such offer constituted the policy limits, they would have recommended an acceptance of the offer.

The defendant has filed several assignments of error, all of which relate to two questions which this Court is

asked to answer. First, may an insurance company be held liable because of bad faith for a judgment in excess of its policy limits when it never received a settlement demand for or within its policy limits? Secondly, was there evidence that the claim against the Rowlands could have been settled within the limits of their insurance policy?

As to the first question, the defendant insurance company takes the position that until the injured party has offered to settle the case for an amount within the policy limits, the company is under no legal duty to attempt to effectuate a settlement. It is insisted that until such an offer is made there is no conflict of interests between the company and its insured. It is likewise argued that if the demand is in excess of the policy limits the insurer has no authority to bind the insured by a settlement and therefore cannot be guilty of bad faith in failing to settle. After much research and thought about the matter we find ourselves unable to agree with this position.

The defendant, under the terms of the Rowlands insurance policy undertook to "defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy." The policy also reserved to the defendant the right to "make such investigation and settlement of any claim or suit as it deems expedient."

It is well established that an insurer having exclusive control over the investigation and settlement of a claim may be held liable to its insured for an amount in excess of its policy limits if as a result of bad faith it fails to effect a settlement within the policy limits. *Coppage v. Firemen's Fund Ins. Co.*, 6 Cir., 379 F.2d

621 (1967); *Southern Fire & Casualty Co. v. Norris*, 35 Tenn.App. 657, 668, 250 S.W.2d 785, 790 (1952); *Vanderbilt University v. Hartford Accident & Indemnity Co.*, 109 F.Supp. 565 (D.C.Tenn.1952); *Perry v. United States Fidelity & Guaranty Co.*, 49 Tenn.App. 662, 359 S.W.2d 1 (1962). This is also the prevailing rule in the vast majority of jurisdictions in this country. See: 29A American Jurisprudence, Insurance, sec. 1444, p. 556 (1960).

Such a rule is both necessary and practical. In return for the insurance company's agreement to cover losses occasioned by the negligent acts of the insured, the insured must surrender his right to control the defense of claims brought against him. The insured is, however, under a duty to cooperate with the company in its defense of the matter. The company assumes that the insured is acting in good faith and telling the truth when he furnishes information concerning the facts and circumstances surrounding the act or acts over which the claim arises. The company also assumes and trusts that the insured is not acting in collusion with the injured party in an attempt to induce the company to make payment on a false claim.

On the other hand the insured assumes that the insurance company will act in good faith and in a diligent manner in its investigation, negotiation, defense and settlement of claims brought against the insured. Each party assumes and trusts that the other party will carry out its part of the bargain.

The law was most ably explained by Judge McAmis in the case of *Southern Fire & Casualty Co. v. Norris*, supra, wherein it was stated:

"The courts seem to be unanimous in holding an insurer liable in tort for an excess over the policy limit where as here it has exclusive control over investigation and settlement of claims and its refusal to settle within the policy limit is fraudulent or in bad faith."

Judge McAmis also said:

"* * * The insured surrenders to the insurer the right to investigate and compromise or contest claims knowing that, in event of a claim, the insurer will have its own interests to consider. But an insured also has a right to assume that his interests will not be abandoned merely because the insurer faces the prospect of a full loss under the policy. The relation is one of trust calling for reciprocity of action. The insured owes the duty of full co-operation—the insurer the duty of exercising good faith and diligence in protecting the interests of the insured."

"Thus, where the claim exceeds policy limits there is always present a possible conflict of interest between the insurer-agent and the insured-principal." *Coppage v. Firemen's Fund Ins. Co.,* supra. The insured hopes to avoid having to pay an amount of money to the claimant which is in excess of his insurance coverage. The insurer would like to have a jury find that there is no liability whatsoever. It is obvious to see how the conflict is intensified when the case against the insured appears to be one of clear liability. In *Southern Fire & Casualty Co. v. Norris,* supra, Judge McAmis makes the following statement:

"The cases covered in the notes, supra, establish the prevailing rule that the right to control investigation,

settlement and litigation of claims must be subordinated to the insurer's contractual duty to indemnify the insured against loss; that the insurer cannot escape liability by considering only what appears to be for its own interest. It must consider also the impact of its decision upon its insured and deal fairly and in good faith. This duty arises not so much under the terms of the contract but is said to arise because of the contract and to flow from it.

*    *    *    *    *    *

"If the proof, in the light of all the relevant circumstances, and inferences to be drawn therefrom is such as to leave a reasonable basis for disagreement among reasonable minds, the question of good faith of the insurer in the handling of the claim and conducting compromise negotiations is for the jury." (Cases cited.)

As was stated in the case of *Harris v. Standard Accident & Insurance Co.*, 191 F.Supp. 538, 540 (S.D.N.Y. 1961):

"Bad faith—the failure to comply with this obligation—is generally proven by evidence largely circumstantial in nature. It is most readily inferable when the severity of the plaintiff's injuries is such that any verdict against the insured is likely to be greatly in excess of the policy limits and further when the facts of the case indicate that a defendant's verdict on the issue of liability is doubtful."

The Court in *Brown v. Guarantee Insurance Co.*, 155 Cal.App.2d 679, 319 P.2d 69, 75, 66 A.L.R.2d 1202 (1957), lists some factors which should be considered in deciding whether the insurer's refusal to settle con-

stituted a breach of its duty to exercise good faith, to-wit:.

"* * * the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; the amount of financial risk to which each party is exposed in the event of a refusal to settle; the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer."

■ We are asked to hold as a matter of law that an insurance company cannot be held liable for bad faith for failing to settle a case when there is no demand for settlement for an amount of money which is within the limits of coverage afforded by the policy of insurance. We are of the opinion that such is not the law nor should it be so. In the case of *Cernocky v. Indemnity Insurance Co. of North America*, 69 Ill.App.2d 196, 216 N.E.2d 198, 205 (1966), the court stated:

"* * * the fact that no offer was made by Marquardts to settle within the policy limits is merely one factor to be considered in light of the surrounding circumstances in determining whether the defendant was guilty of bad faith."

In *Bell v. Commerical Insurance Co. of Newark*, N.J., 3 Cir., 280 F.2d 514 (1960), the insured had a policy

which provided for a $10,000.00 limit for injury to any one person to be paid by the company. The only offer made by the claimant was for $25,000.00. The United States Court of Appeals found that there was enough evidence of bad faith to let the case go to the jury. It was pointed out by the court that there was no substantial question of liability and that the insurer took the position and the offer was beyond the policy limits and, therefore, there was no duty to make a counter offer, or to pursue negotiations. The court further pointed out that sometime during the course of the proceedings the attorney for the injured party which if explored might have led to settlement within the policy limits.

In the instant case there is evidence that the attorney for McRea also made a remark which might have led to a settlement within the policy limits if the defendant had chosen to pursue the matter instead of walking away.

In 25 Tennessee Law Review at page 436, the author states:

"A company must use good faith, skill and diligence in timing its settlement negotiations and unduly delaying an endeavor to affect a settlement or submit a settlement counter proposal may be held to be bad faith."

It is true that in most of the cases dealing with the problem at hand, there has been an offer to settle for an amount within the policy limits. However, to hold as a matter of law that an insurance company cannot be guilty of bad faith unless it has received an offer of settlement within the policy limits could most certainly lead to inequitable results. We see nothing, under such a holding, to prevent an insurance company, in a case where liability is certain and injury great, to simply

decline negotiations with the injured party and later assert that there was no offer within the policy limits. We do not hold that the insurance company has an affirmative duty to negotiate with the injured claimant in all cases. We would only say that a refusal to discuss a settlement may be considered along with other evidence in determining the issue of bad faith. We would not disagree with the ruling in the case of *Cowden v. Aetna Casualty and Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957), where the Supreme Court of Pennsylvania held that a refusal to negotiate was insufficient evidence of bad faith when there was an honest belief on the part of the insurer that the insured's act was not the proximate cause of the accident, and that all liability could be avoided on that basis.

The defendant asserts, however, that until the claimant, Mr. McRea, made an offer to settle the case for an amount within the policy limits, it was under no duty to either make a counter proposal or to disclose the limits of the policy in an attempt to settle the claim; and, therefore, it cannot be found guilty of bad faith. Would the defendant likewise say that as long as the claimant does not demand an amount greater than the policy limits the insured has no duty to cooperate with the company in the defense of the case? We think not.

■ There is sufficient evidence in this record to sustain a finding by the jury that the defendant insurance company showed a willingness to gamble with the insured's money in an attempt to save its own and that the insured's interests were subordinated to those of the defendant. The position taken by the defendant in the defense of the claim against the Rowlands would suggest that instead of exercising good faith in fact, in consider-

ing the interests of the Rowlands, it was determined to do as little as it could legally get by with in that regard.

The defendant next insists that there was no competent, material evidence upon which the jury could have based a finding that the case of *McRea v. Rowland* could have been settled within the policy limits. Mr. McRea's attorneys both testified that had they received an offer of $5,000.00 plus the property damage that this would have indicated to them that such amount was the limit of the coverage and that they would have recommended such a settlement.

The defendant argues, however, that the failure of the plaintiffs in the instant case to call Mr. McRea to the stand to testify that he would have accepted such a settlement raises an inference that his testimony would have been unfavorable to the plaintiffs' position, and that the plaintiffs have thus failed to prove an essential element of their case.

We must disagree with this contention, as we are of the opinion that proof that the claim against the plaintiffs could definitely have been settled within the policy limits is not an essential element of the plaintiffs' case. The defendant was not under an absolute duty to bring about a settlement, but only to exercise good faith in its defense of the claim against the Rowlands, and in conducting negotiations in an attempt to settle the matter. As we have previously stated herein, under the proper factual situation an insurance company might decline to negotiate in the honest belief that the insured was not in fault and that there was no legal liability whatsoever. This must, however, always be done in good faith.

█ ·The·charge of the trial court that before finding for the plaintiffs they must find that the case could have been settled within the policy limits was beneficial to the defendant rather than detrimental to its interests.

It results that the decision of the Court of Appeals must be affirmed.

DYER, CHATTIN and CRESON, JUSTICES, concur.

HUMPHREYS, JUSTICE, not participating.