390 So.2d 761 (1980)
GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., Appellant,
v.
AMERICAN CASUALTY COMPANY OF READING, PA., Appellee.
No. 79-1234.
District Court of Appeal of Florida, Third District.
November 18, 1980.
Rehearing Denied December 19, 1980.
*762 Corlett, Merritt, Killian & Sikes and Linda Loomis Shelley, Miami, for appellant.
Podhurst, Orseck & Parks and Joel D. Eaton and Walter H. Beckham, Jr., Miami, for appellee.
Before HENDRY, NESBITT and BASKIN, JJ.
BASKIN, Judge.
John Brown, Jr., was sued when a neighbor's young child drowned in his pool. Following an adverse jury verdict resulting in a settlement of $690,000, the pool owner's excess insurance carrier, American Casualty Company of Reading, Pennsylvania, sued the primary insurance carrier, General Accident Fire and Life Assurance Corporation, Ltd., for General Accident's bad faith refusal to negotiate and settle the parents' claims. General Accident appeals an adverse final judgment of $100,000 entered pursuant to a jury verdict as well as awards of attorneys' fees and pre-judgment interest.
The issues to be decided include: whether an excess carrier may recover damages for the primary carrier's bad faith refusal to settle a claim against the insured when the claimants make no offer to settle within the primary carrier's policy limits; whether the award of attorneys' fees to the excess carrier and the amount awarded were proper, and whether pre-judgment interest should have been awarded. We affirm the trial court's decisions upon our holding that the excess carrier was entitled to recover damages, attorneys' fees, and pre-judgment interest as a result of the bad faith refusal by the primary carrier to negotiate or settle, and that a settlement offer within the primary carrier's policy limits was not a prerequisite to its liability.
On December 12, 1971, the MacDiarmids' twenty-three month old daughter wandered into a neighbor's unprotected pool and drowned. John Brown, Jr., the pool owner, was insured by General Accident's liability insurance coverage up to $300,000 and by an American Casualty excess liability insurance policy of $1,000,000. The MacDiarmids sued Brown and his two liability *763 insurers. General Accident, the primary carrier, defended the action in accordance with its contractual obligation to its insured. American Casualty, the excess carrier, did not take an active role in the litigation; instead, it followed the usual insurance industry custom of notifying the primary carrier and asking to be kept informed. Discovery proceedings disclosed that defendants were potentially exposed to a large adverse judgment. On November 13, 1973, counsel for General Accident and its local adjuster were convinced that the MacDiarmids would probably win and that the verdict would be substantial. Counsel for General Accident wrote his client on November 28, 1973, stating that "[T]his case is taking overtones of a very serious exposure and I suggest that you carry the matter at your full reserve of $300,000." The requested reserve was the amount required to attempt settlement of the law suit.
The MacDiarmids' counsel also wrote to counsel for General Accident demanding that the case be settled for $1,000,000. The demand was later reduced to $900,000. The adjuster was asked to contact American Casualty to see if it would contribute toward a settlement if General Accident "threw in" its policy. The adjuster did not contact the excess carrier. Instead, General Accident, at the direction of the home office, took the position that the MacDiarmids' opening demands were outrageous and refused to negotiate with them unless they made a more reasonable settlement offer.
Shortly before the action went to trial, American Casualty wrote to General Accident demanding that General Accident make an effort to settle the case. General Accident did not respond to the letter. General Accident never offered its policy limits to the MacDiarmids as requested by American Casualty. In fact, General Accident made no offer of any kind to the MacDiarmids until the trial started. At that time, General Accident offered $25,000 to settle the case. The offer was refused.
The jury returned a verdict of $700,000, and judgment was entered against Brown and his two carriers. The matter was eventually settled for $690,000, with General Accident paying its $300,000 limits and American Casualty paying the remaining $390,000. American Casualty then filed suit against General Accident alleging that it had been damaged by General Accident's "bad faith" refusal to negotiate with the MacDiarmids and to settle their claim for a reasonable amount. The action proceeded to trial. Testimony revealed the claim probably could have been settled for $400,000.
General Accident contended in motions for a directed verdict that it was entitled to judgment as a matter of law since American Casualty failed to prove the MacDiarmids had offered to settle their lawsuit within General Accident's policy limits of $300,000. After the jury returned a verdict for $100,000[1] in favor of American Casualty, the court conducted a hearing on American Casualty's motions to award attorneys' fees and to allow pre-judgment interest as well as on General Accident's reserved motions for directed verdict. American Casualty presented evidence that its attorneys had expended 350 to 400 hours, and three expert witnesses estimated a reasonable fee to be between $50,000 to $75,000. Although General Accident argued that American Casualty and its attorneys had entered a contingent fee agreement providing attorneys' fees of $20,000 or 20% of the gross recovery, the court awarded attorneys' fees of $42,500. The court allowed pre-judgment interest of $28,093.15 and, upon denying renewed motions for directed verdict, entered judgment for American Casualty in the total amount of $170,593.15. This appeal ensued.[2]
*764 The courts have developed an action for bad faith in order to protect insured persons from unnecessary excess judgments resulting from the willingness of insurance companies to risk trials rather than negotiate and settle claims against insured individuals. The insurance company, usually in control of settlement under policy provisions requiring its consent, is obligated to comply with its concomitant duty to exercise reasonable diligence and decide in good faith whether to settle a claim. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). Generally, a refusal by a company to agree to an offer to settle within policy limits creates a conflict between an insurer and its insured, especially when the insurer is aware that the insured may not be able to contribute amounts in excess of the policy. In that situation, the offer of settlement supplies the predicate for a finding of bad faith. Unfortunately, the courts of this state have extended the principle and, perhaps inadvertently, have made an "offer within the policy limits" a requirement for recovery in bad faith actions. Examining the evolution of this rule, we find a number of instructive opinions.
In American Fire and Casualty Co. v. Davis, 146 So.2d 615 (Fla.1st DCA 1962), the court dealt with a case in which an injured third party offered to settle within policy limits and the insured tort-feasor encouraged his company to settle. The company refused, and a verdict far greater than the policy limits was returned. The court found evidence of bad faith on the part of the insurer in accordance with the Shaw court's explication that from control devolved the duty to exercise good faith. American Fidelity Fire Insurance Co. v. Johnson, 177 So.2d 679 (Fla.1st DCA 1965), announced that the consequence of a refusal to settle when an offer had been tendered was liability for recovery in excess of the policy.
Although Johnson did not hold that an offer to settle was a requirement for the imposition of liability, a federal court interpreting Johnson fashioned its observations of past cases into a rule of law. In Seward v. State Farm Mutual Automobile Insurance Co., 392 F.2d 723 (5th Cir.1968), the court interpreted Johnson to mean that an insurer is not liable for bad faith in the absence of an offer to settle within policy limits. The court admitted, however, that in a non-Erie case, or in a case originating in another state, the court would be able to say that an offer to settle is irrelevant when the insured is judgment proof and the insurer has "washed its hands of the case". Seward v. State Farm Mutual Automobile Insurance Co., supra at 727. In that situation, the insured would not incur liability beyond the policy protection.
When the issue presented itself in Beck v. Kelly, 323 So.2d 667 (Fla.3d DCA 1975), the court concluded that American Fidelity Fire Insurance Co. v. Johnson, supra, and Seward v. State Farm Mutual Automobile Insurance Co., supra, required a stringent result. It stated:
In cases where recovery of such excess [judgment] is based upon the ground that the insurer's conduct in failing to effect a settlement within the policy limits amounts to bad faith, there can be no liability on the part of the insurer in the absence of an offer by the person claiming against the insured to settle within the policy limits. (Emphasis added).
Beck v. Kelly, supra at 668. In Beck, however, the insurer tendered the offer to settle within policy limits and the existence of an offer by the claimant was not germane to the resolution of the case. The Beck rule was followed in Chastain v. Federal Insurance Co., 338 So.2d 214 (Fla.3d DCA 1976).
Other courts, however, have held different views. In Thomas v. Western World Insurance Co., 343 So.2d 1298 (Fla.2d DCA 1977), the court refused to accept the requirement of an offer to settle before imposing liability as a rule of law. The court held that an insurer might be liable for bad faith in circumstances where no offer of settlement was made. The court in Thomas dealt with an insurer's failure to defend. Thomas was followed by Davis v. Nationwide Mutual Fire Insurance Co., 370 So.2d 1162 (Fla.1st DCA 1979) in which the court *765 avoided the Beck rule by distinguishing its facts. In Canadian Universal Insurance Co. v. Employers Surplus Lines Insurance Co., 325 So.2d 29 (Fla.3d DCA), cert. denied, 336 So.2d 1180 (Fla. 1976), the court determined that an offer within the combined policy limits of both carriers was an offer of settlement within policy limits. In Canadian, as in the case before this court, the Beck rule would have permitted the primary insurer to escape liability for bad faith handling of the defense.
The foregoing cases have discussed the rights of an insured in relation to a single insurance carrier in control of the action. What control does the primary carrier exercise over the excess carrier's handling of the claim?
The excess carrier, to the extent of its limit of liability, stands in the shoes of the insured and assumes the rights as well as the responsibilities that the insured would normally have against the primary carrier. See generally Ranger Insurance Co. v. Travelers Indemnity Co., 389 So.2d 272 (Fla.1st DCA 1980). Equitable subrogation principles permit the excess carrier to proceed against the primary carrier when the primary carrier's bad faith refusal to negotiate a settlement has caused the excess carrier to become liable for an excess judgment. Valentine v. Aetna Insurance Co., 564 F.2d 292 (9th Cir.1977); Ranger Insurance Co. v. Travelers Indemnity Co., supra; Continental Casualty Co. v. Reserve Insurance Co., 307 Minn. 5, 238 N.W.2d 862 (1976). See, generally Rebozo v. Royal Indemnity Co., 369 So.2d 644 (Fla.3d DCA), cert. denied, 379 So.2d 209 (Fla. 1979).
Requiring an offer to settle within policy limits may be a sound rule in those situations involving only a judgment proof insured and one insurer and in which bad faith can be proved only by the refusal to accept a settlement within policy limits. When an insured is not judgment proof or when an excess insurer exists, absence of an offer to settle within policy limits is not dispositive of the question of bad faith on the part of the primary insurer.
The primary insurer assumes the duty of negotiating to settle in good faith by virtue of its control of its insured's defense. See generally Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980). The excess insurer has no control. Blind adherence to the Beck rule would force an excess insurer to enter the litigation to defend itself against the primary insurer's bad faith, in contravention of customary insurance practices.
In summary, an offer to settle within policy limits may be a factor to consider in determining an insurer's good faith in the handling of an insured's defense, but it should not be a prerequisite to the imposition of liability for a primary insurer's bad faith refusal to settle. The rule requiring an offer to settle within policy limits, designed to protect an insured from an insurer, does not apply to situations in which an excess insurance policy is at issue or in which an insured is financially able to pay an excess judgment. See Peter v. Travelers Insurance Co., 375 F. Supp. 1347 (C.D.Cal. 1974). In these situations, the settlement offer is only one factor to be considered in arriving at a determination of bad faith. Young v. American Casualty Co. of Reading, Pennsylvania, 416 F.2d 906 (2d Cir.1969), cert. dismissed, 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970); Bell v. Commercial Insurance Co. of Newark, New Jersey, 280 F.2d 514 (3d Cir.1960); Rova Farms Resort, Inc. v. Investors Insurance Co. of America, 65 N.J. 474, 323 A.2d 495 (1974); State Automobile Insurance Co. of Columbus, Ohio v. Rowland, 221 Tenn. 421, 427 S.W.2d 30 (1968). See Continental Casualty Co. v. Reserve Insurance Co., supra; Alt v. American Family Mutual Insurance Co., 71 Wis.2d 340, 237 N.W.2d 706 (1976).
To the extent our decision conflicts with Beck v. Kelly, supra, we recede from Beck v. Kelly. Under the Beck rule, the primary carrier's bad faith failure to negotiate would be without remedy. The court cannot countenance so great a disservice to other interested parties. We therefore hold *766 that an offer to settle within the primary carrier's policy limits is not a prerequisite to its liability to the excess carrier. The trial court correctly denied General Accident's motions for directed verdict.
Next, we address the question of the propriety of the award of attorneys' fees to the excess carrier. Section 627.428(1), Florida Statutes (1973), permits an award of attorneys' fees only to "the contracting insured, the insured's estate, specifically named policy beneficiaries, in third parties who claim policy coverage by assignment from the insured." Roberts v. Carter, 350 So.2d 78, 79 (Fla. 1977). General Accident contends that the trial court erred in awarding attorneys' fees to the excess carrier in its action to recover damages for the primary carrier's bad faith refusal to settle since, it argues, American Casualty does not fall within the provisions of the statute. We disagree.
American Casualty characterizes its position as a third party who claims policy coverage by assignment from the insured. In All Ways Reliable Building Maintenance, Inc. v. Moore, 261 So.2d 131 (Fla. 1972), the court implied a contract to find an assignment of the insured's claim against the insurance company. The court stated:
[T]he purpose of F.S. Section 627.0127, F.S.A. [now section 627.428(1)] is to discourage contesting of valid claims of insured against insurance companies. Under the broad interpretations which this Court has given Section 627.0127, it would appear to follow that an assignee of an insurance claim stands to all intents and purposes in the shoes of the insured and logically should be entitled to an attorney's fee when he sues and recovers on the claim.
All Ways Reliable Building Maintenance, Inc. v. Moore, supra at 132. That decision was cited as an example of a third party claiming policy coverage by assignment from the insured and approved in Roberts v. Carter, supra.
General Accident cites American Home Assurance Co. v. City of Opa Locka, 368 So.2d 416 (Fla.3d DCA 1979), as a reminder that attorneys' fees are not recoverable for indemnity and subrogated rights. In the case before the court, however, American Casualty, the excess insurer, stands in the shoes of the insured with regard to its policy; its liability depends upon the primary carrier's willingness to negotiate and settle claims.
The implied agreement that General Accident would exercise good faith cloaks its relationship with American Casualty with the indicia of contract principles permitting recovery under the statute. Only recently, Ranger Insurance Co. v. Travelers Indemnity Co., supra, held in a case of first impression that an excess carrier may recover from the primary carrier for its bad faith refusal to settle. Unlike a refusal to defend, in which a question of liability exists, a bad faith refusal to settle arises after liability has been initially determined. An award of attorneys' fees accords with the statutory purpose of discouraging the contesting of valid claims. We therefore affirm the award of attorneys' fees.
We find no error in the amount of the fee awarded. The trial court acted within its discretion. United Resources v. City National Bank of Miami, 380 So.2d 1060 (Fla.3d DCA 1980); Snider v. Snider, 375 So.2d 591 (Fla.3d DCA 1979). The court based its award of reasonable attorneys' fees upon consideration of appropriate factors and expert testimony. Travelers Insurance Co. v. Davis, 411 F.2d 244 (5th Cir.1969); Insurance Co. of North America v. Welch, 266 So.2d 164 (Fla.4th DCA 1972), cert. denied, 273 So.2d 77 (Fla. 1973).
Additionally, we find no error in the award of pre-judgment interest. Liberty Mutual Insurance Co. v. Davis, 412 F.2d 475 (5th Cir.1969); Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852, modified on rehearing, 184 So. 860 (1938); Peter Marich & Associates, Inc. v. Powell, 365 So.2d 754 (Fla.2d DCA 1978); English and American Insurance Co. v. Swain Groves, Inc., 218 So.2d 453 (Fla.4th DCA 1969).
For the foregoing reasons, the decision of the trial court is affirmed.
NOTES
[1] Since General Accident has not challenged the sufficiency of the evidence of its bad faith or the propriety of the amount of damages awarded to American Casualty, we need not discuss the evidence presented at trial with particularity.
[2] American Casualty filed a cross-appeal which was abandoned.