IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2004 Session

# FRED SIMMONS TRUCKING, INC., v. UNITED STATES FIDELITY AND GUARANTY COMPANY and its successors in interest, HARTFORD FIRE INSURANCE COMPANY

Direct Appeal from the Circuit Court for Hamilton County
No. 98C0774     Hon. Jacqueline E. Schulten, Circuit Judge

No. E2003-02892-COA-R3-CV - FILED NOVEMBER 29, 2004

In this breach of contract action based on a policy of insurance, the Trial Court determined defendant had breached the contract and awarded compensatory damages, as well as punitive damages. On appeal, we reverse in part, affirm in part, vacate and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, Vacated and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Melinda Meador and Erica Taylor Greene, Knoxville, Tennessee and
Thomas Hickey, of Counsel, Chattanooga, Tennessee, for Appellant, Hartford Fire Insurance Company.

Robert L. Widerkehr, Jr., Chattanooga, Tennessee, for Appellee.

## OPINION

Fred Simmons Trucking Co., Inc. ("Simmons"), brought an action for breach of contract against United States Fidelity and Guaranty Company ("USF&G") and its successor in interest, Hartford Insurance Group ("Hartford"), seeking damages for breach of contract and punitive damages.

At trial undisputed evidence established that USF&G issued an assigned risk policy to Simmons covering Simmons' employees for workers compensation benefits, and that Charles McGeorge, an employee of Simmons, sustained on the job injuries, and was initially paid workers

compensation benefits under the State of Tennessee workers compensation coverage. In February of 1997, Hartford quit paying benefits in Tennessee, and McGeorge hired Kentucky counsel who brought an action in Kentucky under Kentucky's workers compensation law. Defendants refused to defend the Kentucky action and Simmons hired an attorney who represented the employer in the Kentucky action, which resulted in workers compensation benefits being awarded to McGeorge under the Kentucky statute, which were being paid by Simmons.

Following an evidentiary hearing, the Trial Court filed a Memorandum Opinion stating that the punitive damage claim had been bifurcated, and that the remaining claims were for breach of contract and bad faith. The Court found that McGeorge was an employee of Simmons, who lived in Kentucky and was injured in Kentucky. The Court found that Simmons was insured through USF&G, and that Hartford later bought the risk. The Court concluded that the policy purporting to afford coverage in Tennessee only was ambiguous and construed the policy against the insurance company which had drafted the policy.

The Court found that Hartford initially paid benefits pursuant to the Tennessee Act to McGeorge, until his physician (Tutt) opined that he had reached maximum medical improvement in February of 1997. The Court found that Tutt sent two updates in March and asked for a second opinion, but Hartford took this to mean he was not reversing his earlier finding of MMI, but Hartford "ignored the recommendation of the treating physician."

The Court found that Simmons had paid over $250,000.00 in medical expenses to date, plus attorney's fees and permanent benefits. Essentially, the Court found Hartford breached its duty under the contract to pay benefits, and in bad faith cut off payments, and she awarded punitive damages. Compensatory damages in the amount of $240,694.90 were awarded, along with punitive damages in the sum of $250,000.00 against defendant Hartford.

The Trial Court noted that the evidence of bad faith on Hartford's part was "egregious", and that there was an effort get rid of the claim, and then conceal that fact.

Hartford raises these issues on appeal:

1. Did the Trial Court err in holding that the policy was ambiguous?

2. Did the Trial Court err in allowing evidence of Hartford's termination of benefits in Tennessee, when this was not pled in the Complaint?

3. Did the Trial Court err in holding that Hartford acted in bad faith in terminating benefits in Tennessee?

4. Did the Trial Court err in assessing punitive damages against Hartford, and in awarding prospective relief to Simmons that was not prayed for in the Complaint?

5.      Did the Trial Court deny Hartford a fair trial?

The Trial Court's findings of fact are accorded a presumption of correctness in this Court, unless the evidence preponderates against the finding. However, questions of law decided by the Trial Court come to this Court without a presumption of correctness, Tenn. R. App. P. 13(d).

As to the Trial Court's finding that the policy was ambiguous, Hartford argues this is in error, and the policy clearly states that it applies only to Tennessee. The policy, in part one and on its declaration page, states that workers compensation coverage is afforded for the state listed in 3A, which is only Tennessee. Part three of the policy, which extends coverage to other states, expressly provides that it only applies if the insured began work in another state after the effective date of the policy, or if the insured already worked there and notified the insurance company of that fact within 30 days of the effective date. Neither of these events occurred in this case.

Simmons admitted at trial that he had deliveries running through and to Kentucky since 1974. There was no dispute on this point. Thus, Simmons did not begin working in Kentucky after the effective date of this policy, and there was also no contention that Simmons ever notified USF&G or Hartford that Kentucky needed to be included in the policy. As such, part three of the policy and 3C on the declaration page never came into play. The policy unambiguously states that it only applies to Tennessee unless certain conditions were met. The Trial Court erred in finding that the policy was ambiguous. This holding was not the only basis for the Court's Judgment, however, and the remaining issues must be addressed.

Hartford asserts that it was error for the Trial Court to allow evidence regarding Hartford's handling of the Tennessee claim, because Simmons failed to plead this issue. The Complaint filed by Simmons, however, states that McGeorge was paid benefits in Tennessee by Hartford, but Hartford later denied those benefits, which resulted in McGeorge consulting an attorney and filing a claim in Kentucky.

As the Supreme Court has recently explained:

However, as we reaffirmed in White, "[a] complaint 'need not contain in minute detail the facts that give rise to the claim,' so long as the complaint does 'contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.' "

*Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 399 (Tenn. 2002).

As stated in Tenn. R. Civ. P. 8, a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief". The Trial Court found the Complaint sufficiently stated a cause of action for breach of contract and bad faith in the handling of the

Tennessee claim. We agree, and this issue is without merit.

The Trial Court awarded Simmons a judgment based on its finding that Hartford breached the insurance contract and acted in bad faith. As we have previously recognized in *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn. Ct. App. 1986), there is no tort of bad faith, but an insured can seek the statutory bad faith penalty when an insurance company refuses to pay, and the court finds that the "refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy". Tenn. Code Ann. § 56-7-105.

The issue thus becomes whether Hartford breached its duties under the insurance contract, such that damages for breach of contract were appropriate.[1]

Hartford's duties under the contract include that it "will pay promptly when due the benefits required of [Simmons] by the workers compensation law" of Tennessee. There is no dispute that Hartford paid McGeorge temporary disability payments until Dr. Tutt placed him at MMI. At this point, Hartford ceased paying temporary disability benefits, and offered to settle the case for $15,000.00, but it did not establish that this offer was ever communicated to McGeorge, and no settlement was reached or approved pursuant to Tenn. Code Ann. § 50-6-206.

Tenn. Code Ann. § 50-6-234 provides that "after temporary disability payments have commenced, when the injured employee reaches maximum medical improvement, a permanent impairment rating is given and the compensability of the injury has not been contested by the employer, then payments shall continue until the earlier of the following events: the injured employee accepts or rejects a job offered by the employer at a wage equal to or greater than the employee's pre-injury wage . . .; the parties agree to waive the holding of a benefit review conference; or a benefit review conference is held and the report is filed pursuant to §50-6-240."

Thus, Hartford's argument that it rightfully terminated benefits because Dr. Tutt said McGeorge was at MMI does not comport with the statute, since there was no proof that any of these requirements contained in the statute were met such that temporary disability benefits could be terminated. Moreover, as the Trial Court found, Hartford had reason to suspect that Dr. Tutt might well be rescinding his finding of MMI, since he asked for a second opinion and reinstatement of benefits, but they chose to "let it be" and not to ask Dr. Tutt if his findings had changed. The evidence does not preponderate against the Trial Court's finding that Hartford breached its contract with Simmons and acted in bad faith. The remaining issue is the type and amount of damages the plaintiff is entitled to recover from Hartford.

---

[1] Regarding Hartford's argument that the Tennessee worker's compensation statutes are the exclusive remedial scheme for Simmons' claims, Tenn. Code Ann. §50-6-108 clearly provides that "rights and remedies herein granted to an employee . . . shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin" - thus, this exclusivity provision does not apply to the employer.

As this Court has previously recognized:

> Under the general law, remedies available for breach of contract are damages, specific performance, and restitution. Corbin on Contracts (1964 Ed.), s 1102.

> The purpose of the remedy of damages is to put the party in as good a position as he would have been had the contract been completed, and accordingly a plaintiff may recover for the promised performance as well as consequential damages. Corbin, s 1102.

*Chambliss, Bahner and Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn. Ct. App. 1975). In this case, the proof established that Hartford breached its contract with Simmons to pay benefits to McGeorge, as discussed above, and Simmons is entitled to be awarded the amount that Hartford would have had to pay McGeorge under Tennessee law which the parties' contract provided, since Simmons has now been ordered to pay McGeorge's benefits. McGeorge was found to be permanently and totally disabled in the Kentucky action.[2] Tenn. Code Ann. § 50-6-207 provides:

> (4)(A)(I) PERMANENT TOTAL DISABILITY. For permanent total disability as defined in subdivision (4)(B), sixty-six and two-thirds percent (66 2/3%) of the wages received at the time of the injury, subject to the maximum weekly benefit and minimum weekly benefit; provided, that if the employee's average weekly wages are equal to or greater than the minimum weekly benefit, the employee shall receive not less than the minimum weekly benefit; provided further, that if the employee's average weekly wages are less than the minimum weekly benefit, the employee shall receive the full amount of the employee's average weekly wages, but in no event shall the compensation paid be less than the minimum weekly benefit. This compensation shall be paid during the period of the permanent total disability until the employee is, by age, eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act; provided, that with respect to disabilities resulting from injuries which occur after 60 years of age, regardless of the age of the employee, permanent total disability benefits are payable for a period of two hundred sixty (260) weeks. Such compensation payments shall be reduced by the amount of any old age insurance benefit payments attributable to employer contributions which the employee may receive under title II of chapter 7, title 42 of the Social Security Act, 42 U.S.C. § 401 et seq., as amended.

---

[2]We think Hartford is bound by the findings of fact made by the Kentucky Court. Hartford had the opportunity to defend under a reservation of rights and contest the amount and award of damages, which they declined to do.

But the Trial Court erred in saying the employee was "forced to file in Kentucky after Tennessee had stopped all coverage."

The issue of the amount of compensatory damages is remanded to the Trial Court for determination of the amount that Hartford would have been liable for under the Tennessee workers compensation statute, which is the proper amount to award to Simmons based on Hartford's breach of the Tennessee policy. The Trial Court is instructed to utilize the findings of fact as to the type and extent of workers compensation benefits as found by the Kentucky Court and utilize these findings to establish the amount of benefits to reimburse McGeorge under the Tennessee policy. In other words, the Trial Court is directed to enter a Judgment to the extent of coverage under the Tennessee policy, as factually determined by the Kentucky Court.

As previously stated, in Tennessee there is no tort action for bad faith, but Tenn. Code Ann. § 56-7-105 provides that the insurance company "shall be liable" to pay "a sum not exceeding twenty-five percent (25%) on the liability for the loss" if a bad faith failure to pay is proven. Punitive damages are inappropriate[3] in a case such as this because the statutory penalty is applicable, and also because such damages are not generally awarded in cases of breach of contract. See *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn. Ct. App. 1986); *B. F. Myers & Son of Goodlettsville, Inc. v. Evans*, 612 S.W.2d 912 (Tenn. Ct. App. 1980).

Bad faith has been defined as the failure of the insurance company to deal in good faith, and to be diligent in its investigation, negotiation, defense, and settlement of claims brought against its insured. *State Auto. Ins. Co. of Columbus v. Rowland*, 427 S.W.2d 30 (Tenn. 1968). Thus, "the insurer cannot escape liability by considering only what appears to be for its own interest. It must consider also the impact of its decision upon its insured and deal fairly and in good faith. This duty arises not so much under the terms of the contract but is said to arise because of the contract and to flow from it." *Id.* at 34. The question of the insurer's good faith is for the fact finder. *Id.*

The Trial Court's finding of bad faith was proper, and on remand, the Trial Court will determine the proper penalty under Tenn. Code Ann. § 56-7-105.

For the foregoing reasons, we reverse the Trial Court's finding that the policy was ambiguous, vacate the award of damages, and remand to establish damages in accordance with this Opinion. The cost of the appeal is assessed to Hartford Fire Insurance Company.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[3] The specific punitive damage award in this case would require reversal even if it was a proper remedy, because the trial court failed to "clearly demonstrate a consideration of all relevant factors", and the court's findings failed to explicitly refer to the factors set out in the Supreme Court's opinion in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). *Culbreath v. First Tennessee Bank Nat. Ass'n*, 44 S.W.3d 518 (Tenn. 2001).