**CRACKER BARREL OLD COUNTRY STORE, INC., Plaintiff,**

v.

**CINCINNATI INSURANCE CO., Defendant.**

**No. 3:07–00303.**

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 28, 2008.

William Gorman Passannante, Cort T. Malone, Anderson, Kill, New York, NY, John A. Day, Day Blair, Brentwood, TN, for Plaintiff.

Nancy Tordai, Victor C. Peters, Hanson Peters Nye, Barrington, IL, H. Rowan Leathers, Miller Martin, for Defendant.

## *ORDER*

JOHN T. NIXON, Senior District Judge.

Pending before the Court is Defendant Cincinnati Insurance Company's Motion to Dismiss the Third Claim for Relief and Fourth Claim for Relief of the First Amended Complaint ("Defendant's Motion") (Doc. No. 35). Plaintiff Cracker Barrel Old Country Store filed a Response (Doc. No. 51) to which Defendant filed a further Reply (Doc. No. 82). For the reasons stated herein, Defendant's Motion is **GRANTED.**[1]

## I. PROCEDURAL BACKGROUND

Plaintiff filed suit on March 16, 2007. (Doc. No. 1). Plaintiff filed an Amended

---

1. Defendant also filed a Motion for Protective Order and to Amend Discovery Order (Doc. No. 58) seeking to stay certain of Plaintiff's discovery requests pending disposition of the present motion to dismiss. Plaintiff filed a Response and a Cross Motion to Compel Discovery (Doc. No. 59). The heart of this discovery dispute is whether or not the discovery requests at issue are relevant only to the claims for relief which Defendant seeks to dismiss. *See* (Doc. No. 62). Because this Order grants Defendant's Motion and dismisses Plaintiff's Third and Fourth Claims for Relief, the question remains whether certain of Plaintiff's discovery requests are proper in relation to Plaintiff's remaining claims. The Court hereby **REFERS** to Magistrate Judge Bryant these discovery motions (Doc. Nos. 58, 59) for disposition consistent with this Order.

Complaint on May 30, 2007. (Doc. No. 21). Defendant's Answer was filed on June 18, 2007. (Doc. No. 25).

This Court has jurisdiction under 28 U.S.C. § 1332.

## II. FACTUAL BACKGROUND [2]

Plaintiff purchased Employment Practices Liability Insurance ("EPLI") policies from Defendant. These policies provided that Defendant would pay for the defense and indemnification of any suit alleging wrongful employment practices against Plaintiff.

On August 11, 2004, the Equal Employment Opportunity Commission ("EEOC") filed suit against Plaintiff alleging sexual harassment and discrimination by Plaintiff in its employment practices ("EEOC Lawsuit"). *EEOC v. Cracker Barrel Old Country Store, Inc.*, No. 1:04–05273, 2004 WL 4096101 (N.D.Ill.2004). Plaintiff ultimately reached a settlement with the EEOC on March 8, 2006 in the amount of $2 million.

During the interim between the EEOC's filing against Plaintiff and the settlement which closed that case, Plaintiff repeatedly notified Defendant of the EEOC Lawsuit. Defendant initially requested additional information from Plaintiff regarding the suit, but ultimately Defendant denied an obligation to defend or indemnify Plaintiff. Nonetheless, Plaintiff persisted in notifying Defendant of developments in the EEOC Lawsuit, even requesting Defen-

dant's consent to settle the case for the amount of $2 million. Throughout the two (2) years that the EEOC Lawsuit was ongoing, Defendant persisted in denying any contractual obligation to Plaintiff. Plaintiff, in turn, made repeated demands that Defendant defend and indemnify Plaintiff. However, Plaintiff never threatened Defendant with a lawsuit, either for recovery under the insurance policy or for bad faith, in the event that Defendant did not honor Plaintiff's policy.

## III. ANALYSIS

### 1. Plaintiff's Third Claim for Relief

■ Plaintiff's Third Claim for Relief is "For Bad Faith Action Under the Common Law of Tennessee Against [Defendant] Cincinnati." (Doc. No. 21). Defendant argues in its instant Motion that Plaintiff's Third Claim must be dismissed with prejudice because there is no bad faith action by an insured against an insurer under the common law of Tennessee. *See* (Doc. No. 36). Defendant is correct.

Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured; the exclusive remedy for such conduct is statutory, provided by Tennessee Code Annotated § 56–7–105. *Fred Simmons Trucking, Inc. v. U.S. Fidelity and Guar. Co.*, 2004 WL 2709262 at *5 (Tenn.Ct.App.2004); *Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 260 (6th Cir.1994); *Rice v. Van Wagoner Cos., Inc.*, 738 F.Supp. 252, 253 (M.D.Tenn.1990); *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn.Ct.App. 1986).[3]

---

**2.** Because this Order is in response to a Motion to Dismiss, the Court treats the allegations of the nonmoving party as true for purposes of this Order. *Barany–Snyder v. Weiner*, 539 F.3d 327, 331–32 (6th Cir.2008). All information in this section is taken from Plaintiff's Amended Complaint (Doc. No. 21).

**3.** The Court is not aware of any choice of law clause in the insurance policy between the parties. However, the Court considers Tennessee law controlling because (1) Plaintiff is incorporated in Tennessee, making it likely that the contract was issued and delivered there, (2) the insurance policy contains modifications respective of Tennessee law (Doc. No. 21 Attach. Ex. D), and (3) both parties

Plaintiff's arguments to the contrary rest largely on a misreading of *State Auto. Ins. Co. of Columbus, Ohio v. Rowland,* 221 Tenn. 421, 427 S.W.2d 30 (1968), and its progeny. In *Rowland,* the Tennessee Supreme Court provided that there is a common law cause of action for bad faith against an insured by an insurer where: (1) a judgment is entered against the insured (2) that exceeds the policy limits of the insurer's policies, and (3) the insurer has exclusive control over the litigation. *Id.* at 428–30, 427 S.W.2d 30. As Defendant points out, none of these conditions apply to the present suit. See (Doc. No. 82). Plaintiff's Third Claim for Relief falls squarely under the sort of general bad faith claims for which statutory and not common law is the exclusive remedy in Tennessee. As a result, Plaintiff's Third Claim for Relief is **DISMISSED** under Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 2. Plaintiff's Fourth Claim for Relief

Plaintiff's Fourth Claim for Relief is for violation of § 56–7–105 of Tennessee Code Annotated. (Doc. No. 21). Section 56–7–105 creates a cause of action for an insured against an insurer for bad faith refusal to honor a policy; the provision is penal and permits recovery of 25% of the loss incurred by the insured. Tenn.Code Ann. § 56–7–105(a).

■ To succeed on a claim under § 56–7–105, a plaintiff must show that (1) the insurance policy in question is due and payable, (2) a formal demand for the payment was made, (3) the insured waited at least 60 days after making the formal demand before filing suit, unless the insured

refused to pay prior to the 60 days, and (4) the refusal to pay was not in good faith. *Palmer v. Nationwide Mut. Fire Ins. Co.,* 723 S.W.2d 124, 126 (Tenn.Ct.App.1986).

The issue for purposes of this Order is whether Plaintiff's Amended Complaint (Doc. No. 21) contains sufficient facts to make out a claim under § 56–7–105. Defendant alleges that Plaintiff has failed to plead facts demonstrating a "formal demand," a fatal shortcoming on the § 56–7–105 claim in the second *Palmer* requirement, listed above. This is so, according to Defendant, because Plaintiff's Amended Complaint does not allege that Plaintiff specifically warned Defendant of the likelihood of a claim for bad faith. (Doc. Nos. 35, 82). Defendant understands "formal demand" under the law of Tennessee as a term of art that incorporates such a warning of future litigation.

Two (2) questions are logically precedent to resolution of Defendant's claim: (1) was Plaintiff required under Federal Rule of Civil Procedure 8(a)(2) to plead facts tending to show that a formal demand was made?; and (2) does the formal demand requirement entail specific notice of an insured's intent to file a claim for bad faith?

Regarding the first question, the Court begins by noting that Rule 8(a)(2) calls only for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, while the Supreme Court has repeatedly refused to enlarge upon the Rule 9(b) class of claims requiring heightened pleading, *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant*

cite Tennessee authority as controlling in their briefing. *Topmost Chemical & Paper Corp. v. Nationwide Ins. Co.,* 2002 WL 1477880 at *3 (W.D.Tenn.2002) (holding that Tennessee applies the law of the state in

which the policy was issued and delivered where there is no choice of law provision in the policy itself, and citing as probative the authority cited in the briefing of the parties).

*County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), it has also recently held that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

In *Twombly,* the Supreme Court held that a plaintiff alleging violation of § 1 of the Sherman Act, 15 U.S.C. § 1 et seq., must plead facts tending to show an agreement in restraint of trade. 127 S.Ct. at 1965. The *Twombly* plaintiffs plead facts tending to show "conscious parallelism," the phenomenon whereby competing enterprises in a concentrated market act in accordance with their shared interest in synchronized pricing and output. *Id.* at 1963–64. The Supreme Court held that pleading facts of conscious parallelism along with conclusory allegations of conspiracy were insufficient to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 1966. This was for two (2) reasons. First, conscious parallelism is not illegal. *Id.* Second, a rule that allowed plaintiffs to plead first and discover later would be costly for both courts and defendants, particularly in the antitrust context, and might ultimately encourage meritless suits *in terrorem. Id.* at 1966–67.

■ The Court concludes that the same two (2) considerations require that a claim alleging violation of § 56–7–105 must plead facts tending to show that a formal demand was made upon the defendant insurer. The first *Twombly* consideration suggests that a complaint must at least tend to show illegal conduct; in the present context, the bad faith of an insurer does not trigger § 56–7–105 liability without a formal demand. The Court notes that it is not always possible for a plaintiff to plead facts tending to show illegal conduct. In cases like *Swierkiewicz* and *Leatherman,*

an employment discrimination claim and a § 1983 action against a municipality, respectively, some discovery was necessary for the plaintiffs to assert facts tending to show their entitlement to relief. *Swierkiewicz,* 534 U.S. at 510, 122 S.Ct. 992; *Leatherman,* 507 U.S. at 166–68, 113 S.Ct. 1160. In those cases, the Supreme Court apparently determined that the importance of the causes of action outweighed the costs of discovery and the potential for frivolous suits.

However, in the present case, unlike evidence of anti-competitive agreement as in *Twombly,* 127 S.Ct. at 1965, evidence of age and national origin discrimination in *Swierkiewicz,* 534 U.S. at 510, 122 S.Ct. 992, or evidence of an unconstitutional municipal policy in *Leatherman,* 507 U.S. at 166–68, 113 S.Ct. 1160, the plaintiff is in possession of the information necessary to plead the existence of a formal demand. Requiring § 56–7–105 litigant to plead facts tending to show a formal demand will not deter § 56–7–105 claims nor make them more difficult to prevail upon: the § 56–7–105 knows critical facts in question.

In this vein, the second *Twombly* consideration—that a reviewing court take into consideration the costs of permitting a fishing expedition in discovery—also weighs in favor of requiring the pleading of facts tending to show a formal demand. Because the plaintiff must know the relevant facts at the outset, no discovery is necessary for a plaintiff to plead the existence of a formal demand. As a result, any discovery on this point is wasteful of judicial resources and unfair to defendants forced to endure protracted suits.

■ As discussed above, Defendant's Motion to Dismiss entails a second logically precedent question, namely, whether a formal demand under § 56–7–105 must include specific notice to an insurer of intent

to file a suit for bad faith. There is competing authority on this point. On the one hand, there is a string of case law for the proposition that notice of a bad faith claim is essential to formal demand. *Topmost Chemical & Paper Corp. v. Nationwide Ins. Co.*, 2002 WL 1477880 at \*8–9 (W.D.Tenn.2002) ("[n]otably missing ... is a threat of litigation or any mention of the bad-faith penalty"); *Hampton v. Allstate Ins. Co.*, 48 F.Supp.2d 739, 746 (M.D.Tenn. 1999); *Walker v. Tennessee Farmers Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn.Ct. App.1977); *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186, 1190 (1914). On the other, in *Solomon v. Hager*, the Tennessee Court of Appeals found that the formal demand requirement was satisfied where the plaintiff insured had made repeated requests that the policy in question be honored, though bad faith litigation was ever threatened. 2001 WL 1657214 at \*2, \*12 (Tenn.Ct.App. 2001).

Between these conflicting lines of authority, the Court finds that *Topmost*, and not *Solomon*, represents a true statement of the law. The purpose of the § 56–7–105 formal demand requirement "is to allow the insurer to evaluate its reasons for denying the claim after being aware for 60 days that if the claim is not paid, the insurer faces the risk of exposure to a bad faith penalty claim." *Hampton*, 48 F.Supp.2d at 746 (citing *Kirkpatrick*, 164 S.W. at 1190). Section 56–7–105 is thus intended "to supersede the necessity of suit ... the underlying thought being that the insurers on formal demand so made would, noting the warning, thereby be induced to pay the loss without suit...." *Walker*, 568 S.W.2d at 106. Given this understanding, that the prospect of bad faith litigation be made explicit emerges as critical; it is the overt threat of § 56–7–105 litigation that is meant to trigger payment on the underlying policy by the insurer, and it is the failure to pay in the face of this threat that entitles the insured to the bad faith penalty. *Solomon* allowed a sort of constructive notice of the potential for a bad faith claim, finding "that there is material evidence to support a finding that [defendant] Allstate had ample time to contemplate the consequences of its denial of the plaintiff's claim." *2001 WL 1657214 at \*2.* That holding strikes this Court as in direct conflict with the purpose of § 56–7–105, and as such, is an expansion upon the penal statute not authorized by the Tennessee legislature. For this reason, and also because *Solomon* is the lone case to hold in this manner, the Court considers *Solomon* an outlier and rejects it in favor of the *Topmost* interpretation.

As a result, the Court concludes that (1) a claim under § 56–7–105 must plead facts tending to show a formal demand was made, and (2) that a formal demand entails explicit threat of bad faith litigation. Plaintiff in this case did not plead that bad faith litigation was threatened if the Defendant persisted in refusing to honor Plaintiff's policy. Instead, Plaintiff alleged that it repeatedly (1) notified Defendant of the EEOC Lawsuit and its development and (2) demanded that Defendant defend and indemnify in that action. For this reason, the Court finds Plaintiff's Fourth Claim for Relief deficient as a matter of law.

## IV. CONCLUSION

Plaintiff's Third and Fourth Claims for Relief are **DISMISSED** under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

It is so ORDERED.